DONOVAN v. CAMPION et al.

(Circuit Court of Appeals, Eighth Circuit. February 14, 1898.)

No. 872.

1. EQUITY—PARTIES.
In the federal courts the possible parties to suits in equity are divided into indispensable parties and proper parties.

2. SAME—INDISPENSABLE PARTIES—PROPER PARTIES.
Indispensable parties are those who have such an interest in the controversy that a final decree between the parties before the court cannot be made without affecting their interests, or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience; all other parties are proper parties.

3. SAME—PARTIES UNDER CHANCERY RULE.
Under the old chancery rule, parties are divided into necessary and proper parties. All those whose presence is necessary to a determination of the entire controversy are necessary parties, and those who have an interest in the subject-matter of the litigation, which may be conveniently settled therein, but whose presence is not necessary to the determination of the controversy at issue, are proper parties.

4. SAME—INDISPENSABLE PARTIES—NECESSARY PARTIES.
An agent who was employed to procure the title to real estate, and convey it to his principal, and who has done so, is neither an indispensable nor a necessary party to a bill against his principal to set aside the deed for fraud, and to recover the property and its proceeds.

5. VENDOR AND VENDEE—FIDUCIARY RELATION.
No sale from which a substantial advantage has been derived can be sustained when he who actively promoted it acted as the ostensible agent for the vendor, when in reality he was the secret agent of the purchaser.

Appeal from the Circuit Court of the United States for the District of Colorado.

This was a bill in equity by James H. Donovan against John F. Campion, A. V. Hunter, and the Ibex Mining Company, to cancel a deed for an interest in a mining claim, and to recover that interest, and for an accounting of the profits of the mine. The complainant appeals from a decree sustaining a demurrer to the bill, and dismissing the suit.

E. B. Green and Amos Green. for appellant.

Charles J. Hughes, Jr., and Charles Cavender, for appellees.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. This suit involves one-sixth of the same mine and its products in controversy in the cases of Kelley v. Boettcher, 85 Fed. 55, and Curran v. Campion, 85 Fed. 67. It is here upon demurrers to the amended bill, and, with one exception, the questions presented by these demurrers are very similar to those considered and decided in those cases. The suit was brought by the appel-

lant, James H. Donovan, to secure the cancellation of a deed which he made on April 27, 1893, to one Joseph L. Budd, of one-sixth of the Little Johnny lode mining claim, for the recovery of that one-sixth interest, and for an accounting and recovery of one-sixth of the products of the mine. He filed his original bill on September 16, 1895. A demurrer was interposed to it, and sustained. The bill was amended on July 7, 1896; demurrers to the amended bill were sustained; and the suit was dismissed. The appeal challenges the decree of dismissal.

The ground of the demurrers to the bill which was not presented in the cases of Kelley v. Boettcher and Curran v. Campion is that Joseph L. Budd, the grantee in the deed which is attacked, has not been made a party to this suit. The amended bill, however, alleges that Budd is a resident of the state of Ohio; that he was a mere agent or tool of the appellees John F. Campion, A. V. Hunter, and the Ibex Mining Company for the purpose of obtaining the title to the interest of the appellant in their behalf; that the consideration for the deed was paid by the Ibex Mining Company, and not by Budd; that Budd has conveyed the interest he has obtained by the deed to the Ibex Mining Company; and that he has not, and never had, any actual interest in the property. The limitation of the jurisdiction of the federal courts by the citizenship of the parties, and the inability of those courts to bring in many parties beyond their jurisdiction by publication, has resulted in a practical division of the possible parties to suits in equity in those courts into indispensable parties and proper parties. An indispensable party is one who has such an interest in the controversy or the subject-matter of the controversy that a final decree between the parties before the court cannot be made without affecting his interests, or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Every other party who has any interest in the controversy or the subject-matter which is separable from the interest of the parties before the court, so that it will not be immediately affected by a decree which does complete justice between them, is a proper party. Every indispensable party must be brought into court, or the suit will be dismissed. The complainant may join every proper party, and he must join every proper party who would have been a necessary party under the old chancery rule, unless his joinder would oust the jurisdiction of the court as to the parties before it, or unless he is incapable of being made a party by reason of his absence from the jurisdiction of the court or otherwise. The old chancery rule is that all those whose presence is necessary to a determination of the entire controversy must be, and all those who have an interest in the subject-matter of the litigation which may be conveniently settled therein may be, made parties to the suit. The former are termed the "necessary" and the latter the "proper" parties. Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. of North America, 49 U. S. App. 523, 530, 27 C. C. A. 73, 82 Fed. 124, 126; Rev. St. §§ 737, 738; Equity Rule 47; Chadbourne's Ex'rs v. Coe, 10 U. S. App. 78, 83, 2 C. C. A. 327, and 51 Fed. 479, 481; Shields v. Barrow, 17 How. 130, 139; Ribon v. Railroad Co., 16 Wall. 446, 450; Coiron v. Millaudon, 19 How. 113; Williams v. Bankhead, 19 Wall. 563; Kendig v. Dean, 97 U. S. 423; Alexander v. Horner, 1 McCrary, 634, Fed. Cas. No. 169;

Cole Silver Min. Co. v. Virginia & Gold Hill Water Co., 1 Sawy. 685, Fed. Cas. No. 2,990. Tested by these rules, Budd was neither a necessary party, under the chancery rule, nor an indispensable party, under the rule of the federal courts. He had no interest in the subject-matter of the controversy, and no interest in the controversy. He was a mere conduit through which the title of Donovan passed to the mining company, and the entire controversy can be finally determined consistently with equity and good conscience between the real parties in interest who are now before the court. The demurrer to the amended bill cannot be sustained on account of the absence of Budd.

The other grounds of the demurrers in this case are the same that were urged against the amended bills in the two cases against these appellees to which we have referred. The amended bill in this case does not present the same facts and circumstances pleaded in those cases. It presents a case in which an attorney at law, who was already retained and employed by the appellees to purchase for them outstanding interests in this mine, and who knew that it had already produced $2,000,000 above the expenses of its operation, and knew that it was considered worth many millions of dollars, permitted himself to be retained and consulted as his attorney by the appellant, who was ignorant of the history, condition, and value of this mine, and undertook to, and did, as his attorney at law, advise him relative to the condition and value of the mine and the best disposition of his interest, told him that no net products had ever been realized from the operation of the mine up to that time, that it was of little or no value, advised him to sell his interest to Joseph L. Budd for the sum of $2,500, and by these representations and this advice induced him to convey it for that sum, without ever informing him that he was the attorney and agent of the real purchasers, the appellees, to buy this property for them and that he was purchasing, through Budd, for these clients. This bill shows that, at the very time that this deed was obtained and that this attorney made these statements, the mine was producing ore of the value of from $300,000 to $500,000 per month, and that the appellant did not learn of its history, condition, or value at this time until about two weeks before he filed his original bill. It can hardly be successfully maintained that these facts, if established, would not entitle the appellant to a cancellation of his deed. They seem to be ample for that purpose, regardless of the fiduciary relation in which the attorney of the appellees acted to induce the sale; and it is too well settled to admit of discussion that no sale where any substantial advantage has been taken can be sustained when he who actively promoted it acted as the ostensible agent for the vendor, when he was in reality the secret agent of the purchaser. It inaugurates so dangerous a conflict between duty and self-interest to allow the agent of a vendor to become interested as the purchaser, or the agent of a purchaser, in the subject-matter of his agency, that the law wisely and peremptorily prohibits it. McKinley v. Williams, 36 U. S. App. 749, 752, 20 C. C. A. 312, 313, and 74 Fed. 94, 95, and cases there cited. The bill in this case is of the same general character, has the same defects, and is subject to the same general objections, as that in Curran v. Campion. While it does not plead the same facts and circumstances, it does present a state of facts the gen-

eral character and legal effect of which are not so radically different from those portrayed in that bill as to admit of a conclusion different from that at which we arrived in that case.    An extended recital of its allegations would be futile.    All the questions presented by the demurrers to it which have not already been discussed have been considered and determined in that part of the opinion in Kelley v. Boettcher which treats of the demurrer to the amended bill in that case, and, upon the authority of that decision, the decree below is reversed, and the case is remanded to the circuit court, with directions to permit the appellees to answer the bill.