KOHN et al. v. DRAVIS.

(Circuit Court of Appeals, Eighth Circuit. April 24, 1899.)

No. 1,130.

1. CHATTEL MORTGAGE—EXECUTION OF POWER OF SALE.
    A mortgagee who avails himself of the power of sale contained in the mortgage must strictly pursue its terms, and, when sufficient of the property has been thus sold to satisfy the debt secured and costs, there is an implied agreement that the remainder unsold shall be returned to the mortgagor.

2. SAME—COSTS OF SALE BY MORTGAGEE—ACTION FOR CONVERSION.
    In an action for conversion, by a mortgagor of a stock of goods against the mortgagee, where it appeared that defendant sold a part of the stock in the manner authorized by the mortgage, he is entitled to allowance for the costs of such sale, notwithstanding an unauthorized sale of the remainder.

3. SAME—CONVERSION OR UNAUTHORIZED SALE BY MORTGAGEE — MEASURE OF DAMAGES.
    The measure of a mortgagor's damages for conversion of the mortgaged property by the mortgagee, or its sale in violation of the terms of the mortgage, is the market value, at the time of such conversion or sale, of the portion that would have remained, after sufficient had been sold in the manner provided by the mortgage, to satisfy the mortgage debt and costs.

4. SAME.
    Where a mortgage on a stock of goods authorized the mortgagee to sell at retail, at not less than cost price, until a sufficient amount was realized to pay the mortgage debt and costs of sale, but the mortgagee, after selling a portion of the goods at retail as provided, sold the remainder at auction, the mortgagor may, at his election, adopt as the basis for the assessment of his damages the market value of the goods which would have remained after satisfaction of the mortgage debt, had the mortgagee proceeded with the sale at retail, or the market value of all the goods not sold at retail, less the amount remaining due on the mortgage debt after the application thereon of the net proceeds of the portion so sold.

5. PARTIES—RIGHT TO BRING IN NEW PARTIES—IOWA STATUTE.
    Under Code Iowa 1897, § 3466, which provides that, when a determination of the controversy between the parties before the court cannot be made without the presence of other parties, the court must order them to

be brought in, a mortgagee of personal property, sued by the mortgagor for its conversion, has the right to have subsequent mortgagees brought in.

6. CONVERSION—ACTION BY MORTGAGOR—EFFECT OF SUBSEQUENT MORTGAGES.
The fact that a mortgagor of personal property has given subsequent mortgages on the same property, which are unsatisfied, is a defense pro tanto to an action brought by him against the first mortgagee for conversion of the mortgaged property.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

On January 4, 1893, Theodore H. Dravis, the defendant in error, was a merchant in business at Sibley, in the state of Iowa. He had a stock of merchandise, whose cost price was $8,000. He mortgaged these goods to Kohn Bros., the plaintiffs in error, to secure the payment of $3,816 which he owed them. The mortgage contained a stipulation that "the mortgagee has permission to take immediate possession of such merchandise, and sell the same at retail only, but not at a price less than cost, and sufficient of such goods as will pay the debt hereby secured, with costs." The mortgagees took possession of the goods, and sold such a part of them as cost $3,500. They then sold the remainder at auction, and Dravis brought this action. In his petition he set forth the foregoing facts, and alleged that Kohn Bros., by accepting the mortgage, became the trustees of an express trust, that by selling at auction they had violated this trust, and prayed for a judgment for $8,234.90, the damages which he claimed he had sustained by their auction sale. Kohn Bros. answered that the defendant in error owed them $3,816 on January 4, 1893, that he gave them the mortgage to secure them the payment of this debt, and that they took possession of the stock of merchandise under it; but they denied all the other allegations of the petition. On the day before the case came on for trial in the court below, they filed an amendment to their answer, in which they averred that on January 4, 5, and 7, 1893, Dravis gave five subsequent mortgages, to five mortgagees, whom they named, on this same stock of merchandise, to secure the payment of debts which amounted to $5,122.83, that the aggregate amount of these several mortgages was greater than the value of the goods, that the subsequent mortgages were unpaid, that the mortgagees were entitled to enforce any claim which existed against the plaintiffs in error on account of their sale of the mortgaged property in their order of priority, and that the mortgagor had no interest in the property or its conversion. They prayed that the subsequent mortgagees might be made parties to the action, and might be required to state their respective claims under their mortgages. On the first day of the trial of the case, they made a motion in accordance with this prayer; but the court denied it, and struck from the files the amendment to their answer. On the trial the court refused to permit them to prove the market value of the goods, and instructed the jury to return a verdict against them for the cost price of the stock of merchandise, less the $3,816 and interest which was due to them on the original debt of Dravis and the costs of the sale. This instruction resulted in a judgment against the plaintiffs in error for $4,666.44, which this writ of error challenges.

Deloss C. Schull (William H. Farnsworth, James M. Flower, Frank J. Smith, and Harrison Musgrave, on brief), for plaintiffs in error.
George W. Argo and D. J. Murphy, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts, delivered the opinion of the court.

The mortgage authorized the plaintiffs in error to sell the merchandise at retail only, and at not less than cost, until they realized the amount due them and the cost of this sale. This limitation of the amount and the method of the sale raised the implied agreement

that, when the limit of the sale had' been reached, the unsold remainder of the goods should be returned to the mortgagor. Those who avail themselves of the power of sale in a mortgage must strictly pursue its terms. By accepting the mortgage, and the benefit of the power it contained, these mortgagees agreed that they would sell the stock of goods in accordance with its terms until they realized their claim, and that they would return the unsold remnant to the mortgagor. They violated this contract. After they had sold at retail such a part of these goods as cost $3,500, they sold the remainder at auction. What is the proper measure of the mortgagor's damages for this breach of the agreement? The court below held that it was the cost price of the entire stock mortgaged, less the amount due on the debt of the mortgagor and the costs of the sale, and this ruling is assigned as error.

If the plaintiffs in error had bought these goods at the cost price, or if they had agreed to pay the cost price for them, that price would have been the measure of the mortgagor's damages for the violation of that contract. Wicker v. Hoppock, 6 Wall. 94, 99, 100. But they made no such agreement. The extent of their contract was that they would sell from their stock at retail and at cost until they obtained proceeds enough to pay the costs of such a sale and the debt of the mortgagor to them, and that they would return the remainder of the goods to him. What, then, would the mortgagor have received if they had. fulfilled their agreement? Evidently, the unsold remnant of the stock, after a sufficient amount had been sold from it to pay his debt and the costs of the sale,—nothing more, and nothing less. What, then, was the real and entire effect of the breach of the agreement upon the rights of the mortgagor? It was that the mortgagees sold at auction, and thus converted to their own use, the unsold remnant of the mortgaged stock which they had agreed to return to him. They had the right to apply all the stock, except this remainder, to the payment of the debt and costs, by the terms of the mortgage; and, if the mortgagor received the benefit of this entire remnant, he could not suffer any loss by the method which the mortgagees adopted in disposing of their part of the property. If Kohn Bros. had agreed to buy this remnant at its cost price; if they had agreed to pay its cost price, at any time or in any way; if they had even contracted to sell it at its cost price,—they might have been liable to the mortgagor for that amount. But the limit of their undertaking here was that they would return this remainder of the goods to the mortgagor, and this was the only stipulation of the contract which was violated to his prejudice. They failed to return this remnant, and they converted it to their own use; but the measure of their liability could not exceed its market value at the time of its conversion, because the mortgagor could not have obtained more than that amount for it if it had been returned to him. The difference between that which the injured party would have received if the contract had been performed, and that which he did receive, is the true standard for the measure of damages for a breach of a contract, because that measure gives the sufferer that full and exact compensation for his injury which it is the aim of the law to bestow.

Kingman & Co. v. Western Mfg. Co., 34 C. C. A. 489, 92 Fed. 486. The mortgagor in the case at bar would have received the remnant of his stock of goods, after a sufficient amount had been sold from it at retail and at cost to pay his debt and the costs of the sale, if the contract had been performed. By the breach of the agreement he lost nothing but this remnant, and the mortgagees converted this to their own use by their sale of it at public auction. The measure of damages for the conversion of personal property or for the sale of mortgaged personal property in violation of the terms of the mortgage is the market value of the property at the time of the conversion or sale. Gravel v. Clough, 81 Iowa, 272, 276, 46 N. W. 1092; Coad v. Cattle Co., 32 Neb. 761, 49 N. W. 757; Wygal v. Bigelow, 42 Kan. 477, 22 Pac. 612; Cushing v. Seymour, 30 Minn. 301, 306, 15 N. W. 249; Coe v. Cassidy, 72 N. Y. 133, 138; Denny v. Faulkner, 22 Kan. 75, 83; Thew v. Miller, 73 Iowa, 743, 747, 37 N. W. 771. The result is that the court below fell into an error in measuring the mortgagor's damages by the cost price of the stock, less his debt to the mortgagees, and in refusing to permit the latter to prove the market value of the remnant of the stock which they agreed to return; and the case must be tried again.

In view of the second trial, we remark that we have considered the question of damages in the belief that an estimate of them on the basis of the market value of the remnant which would have remained if the mortgagees had proceeded with the sale at retail until they had realized their claim and costs will yield a larger amount to the mortgagor than the amount of the proceeds of the actual sale at retail, and the market value of the goods which they did not actually sell in this way, less the costs of the sale at retail and the amount of the mortgagor's debt and interest. Since the mortgagees did not complete the sale at retail, we have no doubt that the mortgagor may choose either of these bases for the assessment of his damages which he thinks will be the more advantageous to him. Botsford v. Murphy, 47 Mich. 536, 537, 11 N. W. 375, 376.

This case presents another question. The plaintiffs in error filed an amendment to their answer the day before the trial, in which they pleaded that within a few days after their mortgage was made, and long before the auction sale of the property, the mortgagor made five mortgages upon this stock of goods to secure debts which amounted to more than $5,000, that these debts were unpaid, and that the property was not worth as much as the aggregate amount of the mortgages upon it. On the next day they moved the court to make the subsequent mortgagees parties to the action, but the court denied the motion and struck out the amendment. It is unnecessary to consider here whether or not this amendment and motion were made in time, because there will be ample opportunity before the next trial of the case to present them upon their merits. There is no doubt that one of the subsequent mortgagees, whose debt is unpaid, can maintain an action against the plaintiffs in error for the conversion of the property and the destruction of his lien, and can recover any damages which he has

sustained thereby. If the mortgagor may also obtain a judgment against these mortgagees for the entire difference between the value of the mortgaged property and his debt to the plaintiffs in error, they are in danger of a double liability for the same wrong. Section 3466 of the Code of Iowa of 1897 provides:

"The court may determine any controversy before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy between the parties before the court cannot be made without the presence of the other parties, it must order them to be brought in."

The defendant in error bases his right to recover in this case on the ground that Kohn Bros. were the trustees of an express trust, and he was the beneficiary. He alleges in his petition that—

"By accepting said mortgage, and taking possession of the goods and property described therein, the said defendants became, were, and are trustees of an express trust, and that the plaintiff is the beneficiary; * * * that the defendants have violated their trust, and, by selling said goods for less than the cost price thereof, the plaintiff has been greatly damaged, in the sum of $8,234.90."

· An answer that, under assignments or mortgages, third parties claim and appear to be the only beneficiaries of this trust, clearly shows the existence of a controversy that cannot be determined between the parties to this action. No adjudication of the question thus presented between Kohn Bros. and Dravis would protect the former against the claims of the subsequent mortgagees for the same damages which Dravis is seeking to recover. In Kennedy v. Moore, 91 Iowa, 39, 43, 58 N. W. 1066, the assignee of a note and mortgage brought a suit to collect the note and to foreclose the mortgage. The defendant answered that the mortgagee claimed to own them, and moved, under the statute we have cited, that he be made a party. The supreme court of Iowa held that, since the mortgagee claimed an interest in the note and mortgage, the motion should have been granted. In Evans v. Harvester Works, 63 Iowa, 204, 18 N. W. 881, a sheriff seized exempt mortgaged personal property on an attachment against the mortgagor, and the attaching creditor gave a bond of indemnity. The mortgagor brought an action on the bond, and the creditor pleaded the mortgage as a defense. The court held that the mortgage did not deprive the mortgagor of his cause of action and said:

"The difficulty in the case at bar, if there is any, arises from the fact that the mortgagee, if deprived of his security by the defendants, has a right of action. The defendants should not, of course, be subjected to a double liability. If the mortgagee has been deprived of his security, he should properly be joined with the mortgagor as co-plaintiff. It is the mortgagee's right to demand that he be brought in."

And the court cited the section of the statutes which we have quoted.

While the subsequent mortgagees cannot be said to be indispensable parties to this action, we are of the opinion that under this statute the plaintiffs in error are entitled to have them brought in, unless their joinder will oust the jurisdiction of the court as to the parties before it, or unless they are incapable of being made

parties, by reason of their absence from the jurisdiction of the court, or otherwise. Donovan v. Campion, 29 C. C. A. 30, 31, 85 Fed. 71, 72, 56 U. S. App. 388, 390. In reaching this conclusion, we have not overlooked the contention of the defendant in error that the causes of action which the subsequent mortgagees once had against Kohn Bros. have been barred by the statute of limitations, but we cannot undertake to consider or determine that question in the absence of pleading and proof upon the subject. Of course, if those claims are barred, the subsequent mortgagees have no interest in the controversy, and they should not be made parties to this action, but the question whether or not their claims have fallen within the statute of limitations must be left for the court below to determine.

Finally, we are at a loss to find any sound reason why the existence of subsequent liens upon converted mortgaged property is not a good defense pro tanto to the claim of the mortgagor. He is entitled to recover no more than he has lost. If he had no beneficial interest in the property at the time of its conversion, he has really lost nothing thereby, and he ought not to recover anything. If he had assigned to another his interest in the mortgaged property before it was converted, that fact would have been a complete defense to his action. If he had assigned one-half or one-third of his interest in it, that fact would have reduced the amount of his recovery one-half or one-third; and if he has placed liens upon it by means of mortgages which gave their holders the right to take and sell the property, and to apply its proceeds to the payment of their claims, it is not perceived why that fact should not have a similar effect. One who has mortgaged his property for its value may have the right to redeem it, or a naked legal title to it, but he has no substantial valuable interest in it. If it is converted or destroyed, the direct loss falls, not upon him, but upon the mortgagees, and they have their action against the wrongdoer for their damages. If the mortgagor loses at all, it is only indirectly, when he is compelled to pay the mortgage debts, and is deprived of the mortgaged property which he might have used for that purpose. If, however, he never pays the debts, he loses nothing, and consequently he should recover nothing. In an action by a mortgagor against a mortgagee for the conversion of the mortgaged property, or for a sale of it in violation of the terms of the mortgage, he can recover only the value of his interest or equity in it; and that is the market value of the property, less the aggregate sum of the liens upon it at the time of the conversion. Torp v. Gulseth, 37 Minn. 135, 33 N. W. 550; Roberts v. Kain, 6 Rob. (N. Y.) 354, 358; Cobbey, Chat. Mortg. § 1036. The judgment below is reversed, and the case is remanded to the court below, with instructions to grant a new trial.