CONSOLIDATED GAS CO. OF NEW YORK v. NEWTON, Atty. Gen., et al.

(District Court, S. D. New York.    February 24, 1919.)

1. EQUITY ☞114—PARTIES—INTERVENTION.
    The settled practice in equity is that a person cannot be made a party
    defendant on his own application, unless so required by statute.

2. COURTS ☞343—FEDERAL COURTS—PARTIES—INTERVENTION—"INTEREST."
    Under equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii), authorizing
    the court to permit any one claiming an interest in the litigation to in-
    tervene, the "interest" claimed must be a legal interest, which will, or
    may, be affected by the decree.
    [Ed. Note.—For other definitions, see Words and Phrases, First and
    Second Series, Interest.]

3. COURTS ☞343—FEDERAL COURTS—PARTIES—INTERVENTION.
    To a suit to enjoin enforcement of Act N. Y. April 3, 1906 (Laws 1906,
    c. 125), known as the Eighty-Cent Gas Law, which applies only to rates
    charged private consumers, the city of New York is neither a necessary
    nor a proper party, and the court is not authorized by equity rule 37
    (198 Fed. xxviii, 115 C. C. A. xxviii) to permit its intervention, since it
    has no interest in its corporate capacity which can be affected by the
    litigation, and the duty of protecting the interests of consumers and of
    defending in such case is devolved upon the Public Service Commission
    by Laws N. Y. 1907, c. 429, creating such commission, and upon the At-
    torney General by Executive Law, § 68, effective May 2, 1913.

4. COURTS ☞343—EQUITY RULES—PARTIES—"COMPLETE DETERMINATION."
    A "complete determination" of the cause, within the meaning of equity
    rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii), providing that any person
    may at any time be made a party, if his presence is necessary or proper to
    a complete determination of the cause, refers to a determination of every
    issue in such manner and as to such parties as to render the decree res
    judicata.
    [Ed. Note.—For other definitions, see Words and Phrases, Second Series,
    Complete Determination.]

In Equity. Suit by the Consolidated Gas Company of New York against Charles D. Newton, Attorney General of the State of New York, Edward Swann, District Attorney of New York County, and Travis H. Whitney, Charles S. Hervey, and Frederick J. H. Kracke, constituting the Public Service Commission of the State of New York, First District. On motion by the Corporation Counsel of the City of New York for an order allowing said city to intervene as a party defendant. Denied.

Shearman & Sterling, of New York City (E. Henry Lacombe, John A. Garver, and William L. Ransom, all of New York City, of counsel), for plaintiff.

Godfrey Goldmark, of New York City, for defendant Public Service Commission, First District.

Charles D. Newton, Atty. Gen., Robert S. Conklin, Deputy Atty. Gen., Edward Swann, Dist. Atty., and Felix C. Benvenga, Asst. Dist. Atty., both of New York City, for other defendants.

William P. Burr, Corp. Counsel, of New York City (Vincent Victory, Asst. Corp. Counsel, of New York City, of counsel), for city of New York.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MAYER, District Judge. This is a motion by the corporation counsel, on behalf of the city of New York, for an order, under equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii), to allow the city of New York to intervene as a party defendant in a suit brought by plaintiff to have declared unconstitutional and void the so-called Eighty-Cent Gas Law. The defendants in the present suit are the Attorney General of the state of New York, the district attorney of the county of New York, and the officials constituting the Public Service Commission of the State of New York, First District.

An outline of the history of the litigation in respect of the statute here concerned, and a statement of the status, as matter of law, of the various defendants and the city of New York, are desirable in order clearly to understand the subject-matter of this motion, for the question before the court is solely a question of law, and not one of public or administrative policy, and the only power which the court has is to determine whether or not, under equity rule 37, the city has the right, as matter of law, to intervene, and the court has the right to make its order accordingly.

By chapter 736 of the Laws of 1905, all corporations or persons engaged in the business of furnishing or selling illuminating gas in the city of New York were forbidden to charge said city a higher price therefor than 75 cents per 1,000 cubic feet. This statute dealt solely with the price of gas to the city of New York in its capacity as a municipal corporation. Under section 3 of this statute, it was provided that:

"Any corporation * * * violating any provision of this act shall forfeit the sum of one thousand dollars for each offense to be sued for and recovered in the name of and by the city of New York for its benefit."

On April 3, 1906, the New York Legislature enacted chapter 125 of the Laws of 1906, which fixed the price of gas for all persons or corporations manufacturing, furnishing, or selling the same in the borough of Manhattan, and certain other parts of the city of New York, at 80 cents per 1,000 cubic feet. This latter statute has become familiarly known as the Eighty-Cent Gas Law. Under section 3 of this statute it was provided that:

"Any corporation * * * violating any provision of this act shall forfeit the sum of one thousand dollars for each offense to the people of the state."

And by section 4 it was provided that:

"This act shall not apply to gas furnished or sold to the city of New York."

Under section 1962 of the New York Code of Civil Procedure it is provided that, where a penalty is incurred to the people of the state pursuant to a provision of law:

"The Attorney General, or the district attorney of the county in which the action is triable, must bring an action to recover the * * * penalty, in a court having jurisdiction thereof."

Chapter 737 of the Laws of 1905 established a state "commission of gas and electricity," appointable by the Governor, by and with the ad-

vice and consent of the state senate. The statute conferred upon this commission, among its other powers and duties, certain regulatory powers in respect of gas manufacture and sale, and certain powers and duties in relation to corporations or persons manufacturing or selling gas.

Chapter 125 of Laws of 1906 was to take effect on May 1, 1906. Prior to that date, Consolidated Gas Company brought suit in the then Circuit Court of the United States for the Southern District of New York, asserting that the rate under both statutes, supra, was confiscatory, and therefore unconstitutional, as in violation of the Fourteenth Amendment, and also asserting that the difference in rate between that established for the municipality and that established for individual consumers created an unreasonable classification, which amounted to a denial of the equal protection clause of the Fourteenth Amendment.

Plaintiff in that suit (which is the same plaintiff as in this suit) joined as parties defendants the public officers and official bodies upon whom was cast the duty of enforcing, in one respect or another, the carrying out of both statutes, the constitutionality of which plaintiff was then attacking. The result was that, at the beginning of the suit, the defendants were the Attorney General of the state of New York, the district attorney, the commission of gas and electricity, and the city of New York.

While the personnel of the public officers changed during the progress of the litigation, the only change in respect of the official character of any defendant was that occasioned by the abolition of the commission of gas and electricity and the creation of the Public Service Commissions. In due course, after the enactment of the Public Service Commissions Law (Consol. Laws, c. 48), the officials constituting the Public Service Commission of the State of New York, First District, were substituted as defendants in place of those who had constituted the commission of gas and electricity.

The statute was vigorously defended by the Attorney General, the Public Service Commission, and the city of New York, through its corporation counsel. The district attorney, although a necessary party, was, for all practical purposes, a formal party, and with entire propriety, in the circumstances, left the activities of the case to the other public officers and bodies.

The history of the litigation (the details of which need not be recited at length) will be found in outline in Consolidated Gas Co. v. Mayer et al. (C. C.) 146 Fed. 150, Consolidated Gas Co. v. City of New York et al. (C. C.) 157 Fed. 849, and Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382. The Supreme Court of the United States in Willcox v. Consolidated Gas Co., supra, held as follows:

"Upon a careful consideration of the case before us, we are of opinion that the complainant has failed to sustain the burden cast upon it of showing beyond any just or fair doubt that the acts of the Legislature of the state of New York are in fact confiscatory.

"It may possibly be, however, that a practical experience of the effect of the acts by actual operation under them might prevent the complainant from obtaining a fair return, as already described, and in that event complainant

ought to have the opportunity of again presenting its case to the court. To that end we reverse the decree, with directions to dismiss the bill without prejudice; and it is so ordered."

From the foregoing it is apparent that the opportunity was left open to plaintiff to bring another suit in the future, when and if it thought it could show a state of facts which would render unconstitutional the statutes in question.

In the present suit chapter 736 of the Laws of 1905 is not attacked. No relief whatever is sought against the city of New York, and this suit is brought for the sole purpose of attacking the constitutionality of chapter 125 of the Laws of 1906, in so far as that statute limits the rate for gas sold to private consumers in the city of New York to 80 cents per 1,000 cubic feet. It is further stated under oath, on behalf of plaintiff, that no attack will be made by plaintiff in this suit upon chapter 736 of the Laws of 1905.

At the outset, therefore, it will be seen that the actual situation in the present suit differs from that which obtained in the previous suit in some important particulars: First, as above set forth, the statute fixing the price of gas to the city of New York is not now in controversy; and, secondly, the Public Service Commission, First District, which only became a party after the first suit had been in progress for some time, is the official body of local jurisdiction under existing law which is charged with safeguarding the rights and interests of those affected by the 80-cent rate secured under chapter 125 of the Laws of 1906. The Public Service Commissions Law, being chapter 429 of the Laws of 1907, went into effect on July 1, 1907. The general plan and purpose of that statute was to create a new body of public officials, upon whom was conferred new and important powers in respect of the regulation and supervision of certain classes of public utilities, some of which powers had theretofore been confided to municipal or other local authorities. The Legislature provided for two public service districts, and for a commission in each district; the first district including those counties which constitute the city of New York.

It is unnecessary to set forth in detail the important powers conferred upon these commissions, and it is sufficient in that connection to refer to section 74 of the Public Service Commissions Law to point out the comprehensive and responsible duties of the commissions in regard to gas corporations. That section provides as follows:

"Whenever either commission shall be of opinion that a gas corporation * * * or municipality within its jurisdiction is failing or omitting or about to fail or omit to do anything required of it by law or by order of the commission or is doing anything or about to do anything or permitting anything or about to permit anything to be done, contrary to or in violation of law or of any order of the commission, it shall direct counsel to the commission to commence an action or proceeding in the Supreme Court of the state of New York in the name of the commission for the purpose of having such violations or threatened violations stopped and prevented either by mandamus or injunction. Counsel to the commission shall thereupon begin such action or proceeding by a petition to the Supreme Court alleging the violation complained of and praying for appropriate relief by way of mandamus or injunction. * * *"

From the foregoing it appears that the commission in a proper case is authorized to proceed not only against gas corporations, but even against a municipality itself. On the other hand, where a municipal corporation makes complaint through its mayor, the commission must investigate and take such steps as may be appropriate; for it is provided in section 71 of the Public Service Commissions Law as follows:

"Sec. 71. *Complaints as to Quality and Price of Gas and Electricity—Investigation by Commission.* * * * Upon the complaint in writing of the mayor of a city, * * * in which a person or corporation is authorized to manufacture, sell or supply gas * * * for. heat, light or power, or upon the complaint in writing of not less than one hundred customers or purchasers of such gas * * * in cities of the first * * * class, * * * as to the illuminating power, purity, pressure or price of gas, * * * sold and delivered in such municipality, the proper commission shall investigate as to the cause for such complaint."

Any attempt, therefore, by any gas corporation, either by way of omission or commission, to do an act contrary to law, was safeguarded by the Legislature by imposing upon the Public Service Commission of either district, as the case might be, the affirmative duties set forth in sections 71 and 74, supra: and it was the legislative will that this body should be held responsible for the taking of any steps necessary to obtain redress for or protection against the violation of relevant statutes, such, for instance, as the statute here in controversy.

In other words, the statutory law of New York has erected a system whereby it has charged Public Service Commissions with certain duties and responsibilities in local communities, such as municipalities, which, at least prior to chapter 737 of Laws of 1905, would have been imposed upon municipal officials. The Public Service Commissions Law was a new departure in state policy, and as one of its results the responsibility in law of defending the statute here concerned rests, not upon the municipal corporation known as the city of New York, but upon a commission having jurisdiction within a defined territory coterminous with the city of New York.

In addition to the duty of the Attorney General or the district attorney of the county to prosecute for penalties as above pointed out, section 68 of the Executive Law (Consol. Laws, c. 18) which became effective May 2, 1913, exhibits the policy of the state of New York in desiring that its Attorney General shall resist attacks against the constitutionality of its statutes—a statutory responsibility which did not exist when the case of Consolidated Gas Co. v. Mayer, supra, was begun, unless the Attorney General was made a party to a suit by reason of a statutory duty:

"Sec. 68. *Attorney General to Appear in Cases Involving the Constitutionality of an Act of the Legislature.*—Whenever the constitutionality of a statute is brought into question upon the trial or hearing of any action or proceeding, civil or criminal, in any court of record of original or appellate jurisdiction, the court or justice before whom such action or proceeding is pending, may make an order, directing the party desiring to raise such question to serve notice thereof on the Attorney General and that the Attorney General be permitted to appear at any such trial or hearing in support of the constitutionality of such statute. The court or justice before whom any such ac-

tion or proceeding is pending may also make such order upon the application of any party thereto, and the court shall make such order in any such action or proceeding upon motion of the Attorney General. When such order has been made in any manner herein mentioned it shall be the duty of the Attorney General to appear in such action or proceeding in support of the constitutionality of such statute."

Of course, the courts referred to in section 68 are necessarily the state courts, but, in view of this important state statute, the United States courts might very well regard the Attorney General as having a legal interest in a case in which the constitutionality of a state statute was involved, even though he were not charged with some specific duty under the statute. Indeed, the safeguards with which Congress has surrounded cases involving the constitutionality of state statutes, is illustrated by section 266 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. § 1243]) by which it is provided, inter alia, that no interlocutory injunction suspending or restraining the enforcement of a state statute shall be issued or granted unless due notice has been given to the Governor and the Attorney General of the state and unless a majority of three judges, of whom at least one shall be a justice of the Supreme Court or a Circuit Judge, shall concur in granting such application. The result is that in the case now pending here, while the effect of the statute in controversy is purely local, and the Attorney General may well look to the Public Service Commission for the fullest aid and co-operation, yet the responsibility rests upon the Attorney General of being one of those public officers who must defend the constitutionality of this act. This responsibility is fully appreciated both by the Attorney General and by the Public Service Commission, First District, and they each intend vigorously to defend the enactment.

What active part the district attorney is called upon to take is for him to determine, but there can be no question that he also will properly discharge such duty as is cast upon him.

The attitude of the Attorney General, the district attorney, and the Public Service Commission, First District, upon this motion, is that, while each, of course, is earnest in the performance of and the intention to perform his or its respective duties, they have no objection to the intervention of the city of New York as a party defendant and necessarily leave the matter to the decision of the court to be disposed of as the law may require.

From the foregoing, it is apparent that every officer or public body, who or which is charged by law with a duty in respect of the defense of the 80-cent gas statute and of this lawsuit, has been made a party defendant. The question, then, for the court to determine, is whether, as matter of law, over the objection of plaintiff, the court can order that the city of New York be made a party defendant.

Preliminarily, it may be pointed out that the Supreme Court of the United States has held that—

"The only mode of judicial relief against unreasonable rates is by suit against the governmental authority which established them or is charged with the duty of enforcing them." Re Engelhard & Sons Co., 231 U. S. 646, 34 Sup. Ct. 258, 58 L. Ed. 416.

Such was the procedure in Willcox v. Consolidated Gas Co., supra.

The city of New York, in the previous litigation, was not regarded as a party defendant, so far as chapter 125 of the Laws of 1906 was concerned. Consolidated Gas Co. v. Mayer (C. C.) 146 Fed. 150; Richman v. Consolidated Gas Co., 114 App. Div. 216, 224, 100 N. Y. Supp. 81; Buffalo Gas Co. v. City of Buffalo (C. C.) 156 Fed. 370.

In the Richman Case, supra, the New York Appellate Division of the First Department held:

"Of course, the city of New York does not represent the private consumers of gas."

This view sustained the contention of Mr. (now Mr. Justice) Shearn, who insisted that the restraining order of the United States Circuit Court did not run against Richman, a private consumer, because neither he nor any private consumer was a party to the suit in the United States court.

The question, then, is whether the city of New York is a "proper" party defendant or has "an interest in the litigation," within the meaning of equity rule 37. That rule, which, with the other new equity rules, became effective on February 1, 1913, is as follows:

"Every action shall be prosecuted in the name of the real party in interest, but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party expressly authorized by statute, may sue in his own name without joining with him the party for whose benefit the action is brought. All persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs, and any person may be made a defendant who has or claims an interest adverse to the plaintiff. Any person may at any time be made a party if his presence is necessary or proper to a complete determination of the cause. Persons having a united interest must be joined on the same side as plaintiffs or defendants, but when any one refuses to join, he may for such reason be made a defendant.

"Any one claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding."

The rule is a new rule and the part as to intervention, according to Hopkins' Federal Equity Rules, was suggested by the bar committee of the Circuit Court of Appeals of the Eighth Circuit. Speaking generally, and not technically, the rule is the same in character as rules found in the statutes of various states. See, for instance, Code Civ. Proc. N. Y. § 447. All but the last paragraph clearly refers to those who must or may be made a party defendant by the plaintiff.

[4] A "complete determination" of the cause obviously refers to a determination of every issue in such manner and as to such parties as to render the decree res adjudicata.

[1] The long-settled practice in equity is that a person cannot be made a party defendant on his own application, unless so required by statute. Toler v. East Tennessee, V. & G. Ry. Co. (C. C.) 67 Fed. 168, per Lurton, J., afterwards a Justice of the Supreme Court; Coleman v. Martin, 6 Blatchf. 119, Fed. Cas. No. 2,985; Drake v. Goodridge, 6 Blatchf. 151, Fed. Cas. No. 4,062; Gregory v. Pike, 67 Fed. 837, 15 C. C. A. 33.

That the city of New York is not a necessary party defendant has already been made clear. That it is not a proper party defendant, in the sense of the law, will be at once appreciated, when it is understood what is meant by a "proper" party.

The subject is carefully discussed by Street in his Federal Equity Practice, vol. 1, § 507, where he accepted the rule laid down by Judge Sanborn in Donovan v. Campion, 85 Fed. 72, 29 C. C. A. 30, as follows:

(1) All those whose presence is necessary to a determination of the entire controversy must be made parties to the suit; and (2) all those who have such an interest in the subject-matter of the litigation that the decree, if it should be res adjudicata against them, would cause them gain or loss through the direct operation and effect of the decree, may be made parties thereto, if the complainant or the court is of the opinion that their interest in the litigation may be conveniently settled at the same time as the rights and interests of the "necessary" parties and thus the decree made to run against all those potentially affected by it.

Parties embraced under (1) above, the author quotes Judge Sanborn as pronouncing "necessary" parties; those under (2) above, as "proper" parties, within the concepts of a court of equity.

In section 509 Street deals with "proper parties," and defines them as follows:

"A proper party, as distinguished from one whose presence is necessary, to the determination of the controversy, is one who has an interest in the subject-matter of the litigation that may be conveniently settled therein."

In view of the foregoing, and to illustrate, it may very well be that a beneficiary of a trust is a proper party, while the trustee is a necessary party.

Thus, under old rule 49, in suits concerning real estate, the trustee was a necessary party, while a beneficiary might be made a defendant in the court's discretion, because a proper party.

"In such cases," the rule stated, "it shall not be necessary to make the persons beneficially interested * * * parties to the suit; but the court may, * * * if it shall so think fit, order such persons to be made parties."

Section 255 of the Greater New York Charter (Laws 1901, c. 466), which defines the duties and powers of the corporation counsel, does not confer upon that official rights or duties which the municipality or its departments and officers do not possess, and does not make the municipality a necessary or proper party, where it has no legal interest in a litigation. If plaintiff had joined the city of New York as a party defendant in this suit, and such joinder had been resisted, there can be no question that the court would have been bound to hold that the city of New York could not be made a party defendant.

[2] Referring now to the last paragraph of rule 37, it is plain that "interest" means a legal interest. Indeed, the word "interest" is used four times in rule 37 and must be construed ejusdem generis. In every instance, it is manifest that the interest must be a "legal interest," as those words are understood in the law. There never can be a legal

interest in a suit in equity unless, as the result of the litigation, the decree affects the person or corporation claiming the interest.

An illustration of interest is Weatherly v. Perkins, 160 N. W. 611, where the court, under the Michigan law, allowing interventions in cases at law and equity, granted the petition to intervene of a liquor dealer, in an action brought against his surety on a bond, which rendered the surety company liable in the event that there was an illegal sale of liquor by the dealer.

Another illustration is Central Trust Co. v. Chicago, R. I. & P. R. Co., 218 Fed. 336, 134 C. C. A. 144, where the interveners were bondholders who would be directly affected by the decree.

[3] The city of New York, however, in its corporate capacity, will in no manner be affected by any decree which can be made herein. The rights of the consumers will be affected, but the city of New York as a municipal corporation is not their legal representative in this suit, but their rights under the laws of the state of New York must be safeguarded by other public officials, viz. the Attorney General, the district attorney, and the Public Service Commission. Village of South Glens Falls v. Public Service Commission for the Second District (Court of Appeals, decided January 18, 1919) 121 N. E. 777; Re Engelhard & Sons Co., supra.

Indeed, the fact that the function of the city of New York, so far as concerns chapter 125 of Laws of 1906, is confined to the filing of a written complaint by the mayor, as provided in section 71 of the Public Service Commissions Law, supra, has, in principle, been fully recognized by the New York courts. Quinby v. Public Service Comm., 223 N. Y. 244, 119 N. E. 433; Village of South Glens Falls v. Public Service Comm. for Second District, supra.

In all the cases cited, where the city of New York or some other city or governmental subdivision was a party, it will be found that the city had a legal interest, either (1) because a legislative act directly affecting it was attacked; or (2) because, by reason of some franchise or some statutory provision, the city had an interest or a duty as matter of law. But in this case there is neither legal interest nor legal duty. It appearing, therefore, that the court is without power, and that the application is not one in respect of which the court may exercise judicial discretion, the motion is denied.

In conclusion, it may be observed that, of course, it is the practice of this court to permit briefs to be submitted amicus curiæ, and, no doubt, any judge of this court, before whom the case shall hereafter be presented, will be glad to receive such brief or briefs as the learned corporation counsel may be pleased to submit.

Settle order on three days' notice.