## RADFORD IRON CO., Inc., v. APPALACHIAN ELECTRIC POWER CO.

## APPALACHIAN ELECTRIC POWER CO. v. SMITH et al.

### No. 3389.

Circuit Court of Appeals, Fourth Circuit.

Jan. 10, 1933.

Howard C. Gilmer, of Pulaski, Va., for appellant.

Raymond T. Jackson, of Cleveland, Ohio (John L. Abbot, of Lynchburg, Va., Newton D. Baker, of Cleveland, Ohio, John S. Draper, of Pulaski, Va., and A. Henry Mosle, Creswell M. Micou, and Fraser M. Horn, all of New York City, on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

In the case of Appalachian Electric Power Company v. George Otis Smith et al., members of the Federal Power Commission, in equity, pending in the District Court, a petition was filed by Radford Iron Company praying leave to intervene in order that its right to use the waters of the New river for purposes of transportation should be recognized and maintained. The power company had brought a bill of complaint against the members of the Power Commission in which substantially the following allegations were made: The power company had acquired certain lands and certain flowage rights in lands along the New river and its tributaries in Pulaski county, Va., in order to construct a water power development consisting of a dam and other necessary works, at a point on the New river about one hundred and fifty miles up stream from the present head of navigation on the Kanawha river. Through a subsidiary corporation, the power company had previously filed with the Power Commission, pursuant to section 23 of the Federal Water Power Act, 16 U. S. C. §§ 791, 817 (16 USCA §§ 791, 817), a declaration of intention to construct and operate the water power development in such a way as not to impair the navigable capacity of the stream below, or to affect the interests of state or interstate commerce. The declaration was filed simply in order to secure a determination in advance that the proposed development was not subject to the jurisdiction of the Commission. The power company also filed an application with the Power Commission for a license for the development with the understanding that the application might be withdrawn if it should develop that a federal license was not required. The Power Commission caused an investigation to be made, and found that the river in the part involved was not "navigable waters" within the definition of the Federal Water Power Act (section 3 (16 USCA § 796), but it reached the conclusion that the project, unless operated in accordance with the requirements of the act, would have an adverse effect on the interests of interstate and foreign commerce. Accordingly, the Commission offered to the power company a license, subject to certain conditions and limitations, but the power company refused on the ground that the license and every condition thereof was beyond the power and authority of the Commission. Thereafter the power company requested the Commission to reconsider its findings and to disclaim jurisdiction over the development, or, in the alternative, to issue to the power company a minor part license under section 10 (i) of the Federal Water Power Act, 16 U. S. C. § 803 (i), 16 USCA § 803 (i), containing only conditions necessary and appropriate to the protection of the interests of the United States in its navigable waters. The Power Commission rendered an opinion wherein it ruled that only a standard form license under the act should be tendered, and that the power company should not proceed with the construction until it should have received and accepted this license.

This action the power company declared in its bill of complaint to be arbitrary, unconstitutional, and void, on the ground that the Commission had no jurisdiction under the act to take the action described, and that in attempting to do so, it was depriving the power company of its property without due process of law in violation of the Fifth Amendment of the Federal Constitution. It asserted that the finding and orders of the Commission constituted a cloud on its title to the lands and rights in land involved, and therefore prayed that the orders and actions of the Commission in the premises be annulled and canceled and that the members of the Commission be enjoined from interfering with the plaintiff in the work of development and from requiring the power company to accept a license from the Commission therefor, and that, if the court should find that a li-

cense should be necessary, the Commission be enjoined from imposing any condition other than such as should be necessary and appropriate to prevent a substantial obstruction to or diminishment of the navigable capacity of the Kanawha river or any other navigable waters of the United States.

Radford Iron Company declared, in its intervening petition, that it is the owner of valuable mineral and timber lands on waters tributary to the New river, draining into it at a point ten miles above the site of the proposed dam, and that these tributary streams would be covered by waters to be impounded by the dam between the lands of the iron company and the river. It was alleged that the value of the lands consists to an important extent in the availability of the waters of the New river for the transportation of raw and manufactured material and timber products from the lands down the river to the Norfolk & Western Railroad at Radford, and to the Kanawha and Ohio rivers and the railway connections along their courses; that for several years after 1867 the iron company had operated a pig iron furnace on its lands, and a tramway therefrom to the river, in order to transport iron to the river and supplies from the river to the furnace; and that the proposed dam and works would constitute a complete barrier across the river below the iron company's land, and would prevent the exercise by the petitioner of its right of continuous transportation from the waters to be impounded by the dam to the waters of the river below the dam. It therefore prayed that no relief be granted to the power company upon its bill of complaint except upon the condition that the rights of the iron company to transport its products and materials on the New river be maintained and continued, and that, if the relief prayed by the power company should be wholly denied, the judgment should be entered without prejudice to the rights of the iron company to file a petition and pursue its remedy with the Power Commission. The power company objected to an allowance of the petition of intervention, and the District Court sustained the objection and denied the petition for intervention, from which action this appeal was taken.

■ It is well settled that the only interest which will entitle a person to the right of intervention in a case is a legal interest as distinguished from interests of a general and indefinite character which do not give rise to definite legal rights. Thus it was held in Ex parte Leaf Tobacco Board of Trade, 222

U. S. 578, 32 S. Ct. 833, 56 L. Ed. 323, that persons engaged in the business of selling leaf tobacco to manufacturers of tobacco products should not be allowed to intervene in proceedings for the dissolution of the American Tobacco Company, in order to assail the action taken in the lower court, because the nature and character of their interests was too general; and in Re Engelhard, 231 U. S. 646, 34 S. Ct. 258, 58 L. Ed. 416, it was held that a single telephone subscriber was not entitled as of right to intervene in a suit in which a telephone company had sued a municipality to enjoin rates as confiscatory, since the municipality was the proper party to represent all the subscribers. See, also, similar rulings in Consolidated Gas Co. v. Newton (D. C.) 256 F. 238; Id. (C. C. A.) 260 F. 1022; New York City v. Consolidated Gas Company, 253 U. S. 219, 40 S. Ct. 511, 64 L. Ed. 870; New York City v. New York Telephone Company, 261 U. S. 312, 43 S. Ct. 372, 67 L. Ed. 673.

■ It does not clearly appear that the interest of the iron company in the subject-matter of the pending suit is of the character required by these authorities. The interest claimed is the right of the iron company to transport upon the New river lumber and mineral products derived from its land, and also to transport supplies and materials upon the river to be ultimately delivered upon the land; and it is asserted that, unless the proposed dam is constructed in such a way as not to interfere with the navigation of the river, this right of transportation will be impaired if not entirely destroyed. A right to transport goods upon navigable waters, however, does not necessarily give rise to a legal right which may be asserted in a suit by the interested party to prevent an obstruction to navigation, or made the basis of intervention in a case like that at bar. All obstructions to navigation not authorized by legislative authority are public nuisances, and the state may always object to such a nuisance. But the complaint of an individual with respect to an obstruction in a navigable stream will not always be heard. The rule generally is that an individual may bring an action on account of a public nuisance when and only when he can show that he has sustained therefrom damage of a special character distinct and different from the injury suffered by the public generally, Sullivan v. American Mfg. Co. (C. C. A.) 33 F. (2d) 690; and this rule applies in the case of a public nuisance consisting of an obstruction in a navigable stream, Georgetown v. Al-

exandria Canal Co., 12 Pet. 91, 9 L. Ed. 1012; Silvey v. Commissioners of Montgomery County, Ohio (D. C.) 273 F. 202; Carver v. San Pedro, L. A. & S. L. R. Co. (C. C.) 151 F. 334.

█ The lands of the iron company are not contiguous to the site of the power development, but are removed ten miles therefrom. Nor do they border on the river, although the impounded water will cover the area between the river and the lands if the dam is built. Access to the land from the river will not be interfered with, and the obstruction to navigation, if erected, will affect the iron company only in the same manner as it will affect all other persons having lands on or near the river above the dam who desire to use the stream for navigable purposes. The allegation that for several years after 1867 the iron company transported ores and manufactured iron by means of a tramway to the river, and transported supplies and material from the river to the land, refers to a remote activity, and it may not be inferred that the iron company is making any use of the land at this time which would be restricted by the erection of the power company's works. We do not find in the allegations of the intervening petition that the damage which the petitioner would suffer from the erection of the dam is so distinct and different from the injury that the public generally would endure as to entitle the petitioner to bring a suit in its name.

█ Even if it should be supposed that the petition for intervention makes out a case of apprehended special damage on the part of the iron company, which would support an independent suit on its part against the power company to secure an injunction to prevent the obstruction of the stream, it does not follow that the iron company would be entitled to intervene in the present suit. Indeed the appellant concedes that, if an intervener has substantial rights which he can protect in independent proceedings, he will not usually be permitted to intervene in a suit between other parties, although it may relate to the same subject-matter. In Credits Commutation Company v. United States, 177 U. S. 311, 20 S. Ct. 636, 44 L. Ed. 782, it was

said that an order denying leave to intervene in an equity cause is not regarded as a final determination of the merits of the claim on which the intervention is based, but leaves the petitioner at full liberty to assert his rights in any other appropriate form of proceeding. It is only when he who seeks to intervene has a direct and immediate interest in a res, the subject of the suit, and cannot otherwise protect his interest, that the right of intervention is absolute, and a denial is the subject of an appeal. United States v. California Canneries, 279 U. S. 553, 556, 49 S. Ct. 423, 73 L. Ed. 838; see, also, Board of Drainage Commissioners of Pender County Drainage Dist. No. 4 v. Lafayette Southside Bank of St. Louis (C. C. A.) 27 F.(2d) 286, 287, 293; Elkins v. First National Bank (C. C. A.) 43 F.(2d) 777, 779.

There can be no doubt, in view of the decision of Ford & Son v. Little Falls Co., 280 U. S. 369, 50 S. Ct. 140, 74 L. Ed. 483, that the legal rights of the iron company will not be prejudiced or foreclosed by any decision in the pending suit to which it is not a party. It was held in that case that Ford & Son, as riparian owners on the Mohawk river, were entitled to an injunction and to damages from a corporation which had interfered with the rights in the use of the water vested in them under the state laws, although the interference was caused by a dam and water power development, for which a license had been granted by the Federal Power Commission. The court pointed out that section 27 of the act, 16 U. S. C. § 821 (16 USCA § 821), provides that nothing therein shall be construed as affecting or interfering with the laws of the state relating to the control of water, or any vested right acquired therein. In short, if the iron company's right is one which might be made the subject of an independent suit, it will not be lost by any action of the court in this case. If, on the other hand, it is of a general character, held in common with the general public, it falls within the class which the Federal Power Commission is clothed with the power and the duty to protect. In either aspect, the appellant is not entitled as of right to intervene in this case.

Affirmed.