**BOARD OF DRAINAGE COM'RS OF PENDER COUNTY DRAINAGE DIST. NO. 4 v. LAFAYETTE SOUTHSIDE BANK OF ST. LOUIS.**

**POISSON v. LAFAYETTE SOUTHSIDE BANK OF ST. LOUIS et al.**

Circuit Court of Appeals, Fourth Circuit. June 13, 1928.

Nos. 2706, 2688.

1. **Drains** ⊚⟿20—Amended answer, setting up different defenses in action for interest on drainage district bonds and judgment declaring district organization and bond assessments invalid in proceedings to which plaintiff was not party or privy, held properly stricken (Pub. Laws N. C. 1909, c. 442 [C. S. §§ 5312–5382]).

In action for interest on drainage district bonds, district board of commissioners' amended answer, setting up defenses at variance with those of original answer, containing frivolous, irrelevant, immaterial, and dilatory matters,

collaterally attacking establishment of district and issue of bonds, though proceeds were received and expended by board, and setting up clerk's judgment declaring district's organization under Pub. Laws N. C. 1909, c. 442 (C. S. §§ 5312–5382) and assessments for payment of bonds invalid, though plaintiff was not a party nor privy to proceedings and judgment, and had no notice of alleged infirmities in bonds, *held* properly stricken.

2. **Drains** &c⟶20—**Refusal to permit drainage district receiver to intervene in action for interest on district bonds held proper (C. S. N. C. § 5361).**

In bank's action against board of drainage commissioners for interest on district bonds, purchased by plaintiff on default in payment of debt for which pledged as collateral, court properly refused to permit district's receiver to intervene as party defendant, under guise of holding district's assets, to collect assessments due plaintiff under C. S. N. C. § 5361; such assets belonging to plaintiff for payment of its liens for amount advanced by it.

3. **Judgment** &c⟶707—**Bank, paying in good faith for drainage district bonds, held not bound by judgment, in proceedings to which not a party or privy, declaring district organization and bond assessments invalid (Pub. Laws N. C. 1909, c. 442 [C. S. §§ 5312–5382]).**

Bank, paying in good faith for drainage district bonds on default in payment of debt, for which pledged to it by contractors as security, and accepting recitals, covenants, conditions, provisions, and promises therein respecting issuance of bonds and lawfulness of district's establishment under Pub. Laws N. C. 1909, c. 442 (C. S. §§ 5312–5382), was not bound or affected by judgment rendered in state court proceedings to which it was not a party or privy, declaring district's organization and assessments for payment of bonds invalid.

4. **Drains** &c⟶14(4)—**Legality of drainage district's organization cannot be collaterally attacked (C. S. N. C. § 5379).**

Under C. S. N. C. § 5379, legality of organization of drainage district cannot be attacked collaterally, as by answer in action for interest on bonds issued by it.

5. **Appeal and error** &c⟶960(3)—**Pleading** &c⟶353—**Striking out amended answer was within District Court's discretion and not reviewable (Rev. St. § 954; 28 USCA § 777).**

Under Rev. St. § 954, 28 USCA § 777, ruling striking out amended answer was within District Court's discretion, and not subject of review on appeal.

6. **Parties** &c⟶45—**Application to intervene is addressed to court's sound discretion.**

Application of intervener, seeking to be admitted as party to a pending cause, is addressed to the sound discretion of the court.

7. **Appeal and error** &c⟶78(2)—**Order denying application to intervene is interlocutory, and not appealable.**

Order denying intervener's application for admission as party to pending cause is an interlocutory, not a final, decree, and hence one from which no appeal lies.

8. **Continuance** &c⟶6—**Motion by receiver, not a party, for continuance, after denial of application to intervene and striking of amended answer, held properly denied, particularly in view of time when made.**

District Court properly refused to grant continuance on motion of receiver, whose application to be made party defendant had been denied, and amended answer which had been stricken out, particularly where motion was not made until first day of term, more than three months after time for trial had been definitely set, following delay of over two years, and several witnesses, brought from great distance, were present in court to testify.

9. **Drains** &c⟶20—**Plaintiff held properly allowed to show ownership of drainage district bonds in suit for interest thereon.**

As interest coupons would not be valid claim, if drainage district bonds to which attached were invalid, court did not err in allowing plaintiff to show validity and ownership of bonds in suit to recover interest in default.

10. **Drains** &c⟶20—**Admission of testimony as to matter not personally supervised by witness, note without proof of execution or entries thereon, and newspaper notice of sale of collateral drainage district bonds to payee suing for interest thereon, held not error.**

Assignments of error in permitting officer of bank, suing for interest on drainage district bonds, purchased by it on default in payment of debt for which pledged to it as security by contractors, to testify as to matter between bank and contractors not personally supervised by witness, and admitting contractors' note to bank, without proof of its execution or entries thereon, and notice of sale of bonds, clipped from newspaper, business manager of which made out in complete form and swore to publication certificates, on which payment was made by bank, *held* frivolous, and not to warrant setting aside rulings, which related to matters entirely within court's discretion.

11. **Courts** &c⟶352(8)—**Submission of issues as to plaintiff's ownership of drainage district bonds and amount of defendant's indebtedness on matured coupons, and verdict in form of answers thereto, held not error.**

In action for interest on drainage district bonds, submission of case to jury on issues as to whether plaintiff was owner and holder in due course of bonds, and, if so, in what amount defendant was indebted to plaintiff by reason of attached interest coupons which had matured, and verdict in form of answers to such questions, *held* not error, being in conformity to North Carolina practice.

12. **Courts** &c⟶352(6)—**Instruction that jury must determine facts and answer issues as stated, if they believed evidence thereon, held not reversible error.**

In action for interest on drainage district bonds, instruction that it was jury's province to pass on facts and court's duty to determine law, and that jury should answer "Yes" on issue as to plaintiff's ownership of bonds, if they believed evidence thereon, and answer issue as to amount of interest due as stated sum, *held* not reversible error, being in accordance with federal practice.

**13. Drains ⬥⟹20—Evidence in action for interest on drainage district bonds held sufficient to go to jury and sustain verdict for plaintiff.**

Plaintiff's evidence, in action for interest on drainage district bonds, *held* sufficient to take case to jury and sustain verdict and judgment for plaintiff.

**14. Drains ⬥⟹20—Drainage district receiver, appointed by state court in suit to annul district organization, cannot intervene in federal court suit by bank, not party nor privy to former suit, for interest on district bonds (Pub. Laws N. C. 1909, c. 442 [C.·S. §§ 5312–5382]).**

Drainage district receiver, appointed by state court in suit to annul district organization, under Pub. Laws N. C. 1909, c. 442 (C. S. §§ 5312–5382), *held* not entitled to intervene in, and become party defendant to, suit in federal court against district commissioners by bank, not party nor privy to former suit, for recovery of interest on district bonds, not being a necessary or proper party to such suit.

**15. Receivers ⬥⟹69—Receiver has no vested title or right to litigants' property.**

A receiver has no vested title or right to property of any parties to litigation and does not represent their justiciable rights therein, but is merely an indifferent person appointed as custodian to hold property subject to court's further order.

**16. Receivers ⬥⟹179—Receiver is not proper party to litigation affecting property not in his possession.**

Receiver is not a proper party to litigation affecting or asserting rights to property which is not in his possession.

**17. Parties ⬥⟹45—Intervention by strangers to suit is within court's sound discretion, unless by consent or under statute.**

The right to intervene by parties who are strangers to the suit rests in the sound discretion of the court, unless by consent or in accordance with statute.

**18. Courts ⬥⟹343—Intervention to challenge jurisdiction or inaugurate litigation outside scope of original suit is not permissible (equity rule 37).**

Under equity rule 37, intervention to challenge jurisdiction of court, or otherwise inaugurate litigation not within scope and purview of original suit, is not permissible.

**● 19. Appeal and error ⬥⟹87(3)—No appeal lies from order denying petition to intervene.**

No appeal lies from an order denying a petition to intervene, the right to file it being discretionary with the court.

**20. Appeal and error ⬥⟹816—Writs of error to review order properly denying petition to intervene, and judgment entered on merits pending appeal from such order, may both be disposed of.**

Pending appeal from denial of petition by drainage district receiver to intervene in federal court suit for interest on drainage district bonds being without merit, writs of error to review such order and judgment on merits,

entered before appeal was heard, may both be disposed of.

In Error to the District Court of the United States for the Eastern District of North Carolina, at Raleigh; Isaac M. Meekins, Judge.

Action by the Lafayette Southside Bank of St. Louis against the Board of Drainage Commissioners of Pender County Drainage District No. 4, in which L. J. Poisson moved to be made a party defendant as receiver for such district. To review a judgment for plaintiff, and an order denying the motion, defendant and the receiver separately bring error. Affirmed.

Isaac C. Wright, of Wilmington, N. C., for Receiver.

George E. Butler, of Clinton, N. C. (Butler & Herring and R. L. Herring, all of Clinton, N. C., on the brief), for board of drainage commissioners.

John A. McRae, of Charlotte, N. C. (A. G. Ricaud, of Wilmington, N. C., Marion C. Early, of St. Louis, Mo., and Stewart, McRae & Bobbitt, Plummer Stewart, and William H. Bobbitt, all of Charlotte, N. C., on the brief), for Lafayette Southside Bank of St. Louis.

Before WADDILL and NORTHCOTT, Circuit Judges, and GRONER, District Judge.

WADDILL, Circuit Judge. These two cases so relate to and affect the same subject-matter that they were by consent of the parties heard and argued together upon separate records in this court, and will accordingly be passed upon in a single opinion. Briefly, the cases involve the enforcement of the payment of certain bonds, aggregating $68,500, together with $10,680 interest coupons alleged to be due thereon, issued by plaintiff in error in the first-named case, the board of drainage commissioners of Pender County drainage district No. 4, and held by defendant in error in that case. In the first case, No. 2706, the subject of controversy is the right of defendant in error, the Lafayette Southside Bank of St. Louis, to collect this indebtedness, and the second case, No. 2688, arises upon a writ of error to an order of the District Court for the Eastern District of North Carolina entered in the first-named case, refusing to admit therein as a party L. J. Poisson, receiver of the above-mentioned drainage district, who had been appointed as such in a proceeding in the state court of North Carolina. Separate assign-

ments of error were duly filed in each of the causes, and the cases will be considered upon these respective assignments of error in the order named above. The parties will be referred to by their titles in the District Court.

A careful statement of the facts in No. 2706 is necessary to a correct understanding of the questions at issue. The board of drainage commissioners of Pender County drainage district No. 4, defendant below, was organized and existed under the laws of the state of North Carolina, particularly chapter 442 of the Public Laws of 1909, brought forward in Consolidated Statutes of 1919 as sections 5312 to 5382, inclusive, entitled "An act to promote the public health, convenience and welfare by leveeing, ditching and draining the wet, swamp and overflow lands of the state, and providing for the establishment of levee or drainage districts," etc., and acts amendatory thereof and supplemental thereto. This fact is set up in paragraph 2 of the complaint (page 4 of the record) and admitted in paragraph 2 of the answer of defendant drainage commission (page 13 of record). On or about the 1st day of May, 1922, as set out in paragraph 4 of the complaint, with Exhibit A attached, and admitted in paragraph 4 of its answer, the defendant drainage commission caused to be duly issued its bonds aggregating $68,500, pursuant to the provisions of the statutes of the state of North Carolina above mentioned, entitled as aforesaid, and also pursuant to and in conformity with resolutions and proceedings had and adopted by the said defendant drainage commission, it executed its negotiable promissory bonds, payable to bearer, bearing date of May 1, 1922, numbered, becoming due and in the amounts following:

| Bond No. | Due Date. | Amt. of Each Bond. | Total. |
|---|---|---|---|
| 108 | May 1, 1930 | $ 500.00 | $ 500.00 |
| 126 | May 1, 1931 | 500.00 | 500.00 |
| 144 | May 1, 1932 | 500.00 | 500.00 |
| 162 | May 1, 1933 | 500.00 | 500.00 |
| 180 | May 1, 1934 | 500.00 | 500.00 |
| 102 to 107, both inclusive | May 1, 1930 | 1,000.00 | 6,000.00 |
| 109 to 125, both inclusive | May 1, 1931 | 1,000.00 | 17,000.00 |
| 127 to 143, both inclusive | May 1, 1932 | 1,000.00 | 17,000.00 |
| 145 to 151, both inclusive | May 1, 1933 | 1,000.00 | 7,000.00 |
| 159 to 161, both inclusive | May 1, 1933 | 1,000.00 | 3,000.00 |
| 163 to 168, both inclusive | May 1, 1934 | 1,000.00 | 6,000.00 |
| 170 to 179, both inclusive | May 1, 1934 | 1,000.00 | 10,000.00 |

The bonds thus issued in substance recited that their purpose was to provide a system of drainage in said district No. 4, under and pursuant to, and in strict conformity with, the Constitution and statutes of the state of North Carolina, to promote the public health, convenience, and welfare by leveeing, ditching, and draining the wet, swamp, and overflow lands of said district. Each bond recited on its face that all acts, conditions, and things required to exist, happen, and to be performed precedent to, and in the issue of said bonds, had happened, existed, and been performed in due time, form, and manner, as required by law; that the amount of the bonds, together with all the indebtedness of the district, did not exceed any limit prescribed by the Constitution or statutes of the state, and that before the issuance of the bonds the assessments of benefits had been duly and regularly made, levied, and imposed upon the lands in the said drainage district, in an amount sufficient to promptly pay the principal and interest on the bonds and all other drainage bonds of said district at maturity; that the board of commissioners of Pender County drainage district No. 4 covenanted and agreed with each successive holder of said bonds and coupons thereof that it would promptly enforce and collect the said special assessments; that in the event of any failure, defect, or omission or irregularity in any of the said assessments, it would, in the form and manner prescribed by law, promptly take all steps to correct or supply such irregularity, defect, or omission, and to levy and impose new or additional assessments for the purpose of meeting the principal and interest thereon; and that for the faithful performance of the covenants and conditions contained in said bonds the full faith, credit, and revenues of the said district were thereby irrevocably pledged.

Subsequent to the issuance of the bonds and coupons above described, and before the maturity thereof, the same were for value delivered to A. V. Wills & Sons, Incorporated, contractors undertaking the drainage work, and said contractors, in due course and prior to maturity, without any notice of any default or infirmity, if any, therein, duly pledged with the Lafayette Southside Bank of St. Louis, plaintiff below, the said bonds as collateral security for money paid to them and used in carrying out the drainage contract for a sum amounting to $73,487.07, and in default of the payment of the debt for which the collateral was deposited, such collateral was duly sold and purchased in to meet the amount remaining due on the sum for which it was pledged, namely, $61,775.

The plaintiff bank sued as holder of the bonds mentioned, with sundry arrearages of coupons issued for interest thereon, aggregating, as claimed, $9,660.

On May 25, 1925, the complaint was filed in the first-named case, No. 2706, setting up the cause of action of the plaintiff as herein recited. To this complaint, the defendant drainage commission made answer on July 3, 1925, admitting the execution of the bonds, the creation of the drainage corporation, and the due organization of the same under the laws of the state of North Carolina; that the controversy was one existing between citizens of different states, and the amount, exclusive of interest and costs, exceeded $3,000; and that on or about May 1, 1922, the drainage district bonds were issued payable to bearer, with interest-bearing coupons attached, and that at the date of maturity thereof the amount of each bond was correctly stated as above set forth; and defendant further answered, admitting the execution of the bonds, but denying that the same were delivered to A. V. Wills & Sons, Incorporated, contractors, or that they became the owners of the same, but that, on the contrary, the bonds were delivered to and deposited with the Illinois Trust Company of East St. Louis, Ill., in escrow, to be sold as money was needed to defray the expenses of the operation of the drainage district, including the monthly estimate by the drainage engineers of the work done by A. V. Wills & Sons, Incorporated, contractors.

No further steps seem to have been taken after the filing of the answer aforesaid on July 3, 1925, until on January 22, 1927, on the motion of the defendant drainage commission it was given 60 days in which to file an amended answer, and this amended answer was filed on May 21, 1927. On June 3, 1927, the plaintiff moved to strike out the amended answer and on June 27, 1927, an order was entered striking out the same, which order also refused to permit the plaintiff in error in the second-named case, No. 2688, to intervene and be made a party to the first-named case, as requested on that date. The two motions, namely, to strike out the amended answer filed in the first case, and to admit the plaintiff in error in the second case as a party thereto, were by consent consolidated and heard together, and both motions were denied in a single order, as aforesaid. On September 13, 1927, defendant moved for a continuance of the case, which motion was on that day overruled, the trial court setting forth in its bill of

exceptions filed in the case that an order had been entered on May 30, 1927, by it, setting the case for trial peremptorily as the first case to be heard at the September, 1927, term, and that, for this reason, and because the case had been pending for so long, and that the plaintiff had brought five witnesses, then present in court, from St. Louis to testify at the trial, and that no notice had been given the plaintiff or its counsel that a continuance would be asked for by defendant drainage commission, such motion for a continuance should be, and was, denied, and the trial court therefore ordered that the trial proceed upon the original complaint and answer.

On September 14, 1927, trial of the case was regularly proceeded with, shown from the record (page 62) as follows: "The pleadings were read to the court. The plaintiff offered testimony as follows: Paragraph 1 of the complaint and the corresponding section of the answer. Paragraph 2 of the complaint and the corresponding section of the answer. Paragraph 3 of the complaint and the corresponding section of answer. Paragraph 5 of the complaint and that portion of the corresponding section of the answer as follows: 'Answering the fifth article, the defendant admits the execution of said bonds.' Paragraph 9 of the complaint, and that portion of the corresponding paragraph of the answer as follows: 'Answering article 9, the defendant admits the execution of bond No. 169 and bonds numbered 152 to 158, inclusive, for $1,000 each, payable to bearer, with six per cent. (6%) interest coupons attached.'"

Joseph L. Rehme, of St. Louis, Mo., vice president of the Lafayette Southside Bank, plaintiff, was examined and cross-examined at considerable length, and gave a full and comprehensive account of the acquisition and ownership by his bank of the obligations of the drainage commission sued on, and gave the amount of indebtedness due the bank, and how the original sum owed had been reduced to the amount now sued for, and testified that there was due on the principal of the bonds so acquired $68,500, and interest in arrears thereon amounting to $4,350, at the date of the institution of the suit; that the securities in question were acquired by his bank for value, in due course before their maturity, and without any knowledge or information on its part of any defect or infirmity, if any there was, in the same; that the money paid was used in the construction of the drainage work in question.

The plaintiff bank further tendered as a witness for cross-examination Mr. Meyer, its president, Mr. Rogers, secretary of the Illinois Trust Company, and Mr. Charles, a member of the law firm of Rutherford & Charles. The witnesses were not cross-examined, with the exception of Mr. Charles, of the firm of Rutherford & Charles, which firm had been employed by the Pender County drainage district No. 4 and paid by it to report upon the regularity of the issue of, and upon the validity of, the bonds in question, as shown by the correspondence and vouchers offered in evidence. The witness, Mr. Charles, explained that his partner, Mr. Rutherford, had attended to the transaction, and had since died. The defendant drainage commission offered no testimony, and at the close of the plaintiff's testimony moved for judgment as on a nonsuit, which motion was denied. Defendant excepted, and thereupon the court submitted issues to the jury, which issues, with the answers made thereto by the jury, were as follows:

"1. Is the plaintiff the owner and holder in due course of the bonds described in the complaint as alleged therein? Answer: Yes.

"2. If so, in what amount is the defendant indebted to the plaintiff by reason of coupons which had matured at the date of the commencement of this action, and which were attached to said bonds October, 1923, at the date of the loan? Answer: $4,350."

Defendant excepted to the issues submitted, and in lieu thereof asked that the question of the amount due on coupons alone be submitted to the jury, which the trial court declined to do, and defendant further asked that the jury be instructed to answer interrogatory No. 1 "No," and interrogatory No. 2 "Nothing," which the court also declined to do, to which action of the court the defendant excepted. The court thereupon charged the jury as follows:

"Gentlemen of the jury, it is the province of the jury to pass upon facts in a case, and also the duty of the jury to take the law as laid down by the court, and in this case I charge you that it is your duty, if you believe in the evidence, to answer the first issue 'Yes'; that is to say, that the plaintiff is the owner and holder in due course of the bonds as described in the complaint, and that you should answer the second issue $4,-350."

To the giving of this charge the defendant excepted, and thereupon the court rendered its judgment upon the verdict of the jury as aforesaid, as follows:

"It is, therefore, on motion of A. G. Ricaud and John A. McRae, attorneys for plaintiff, ordered and adjudged, and it is hereby ordered and adjudged, as follows:

"First. That the plaintiff is the holder and owner in due course of bonds of the defendant, described in the complaint, and aggregating the total principal sum of sixty-eight thousand five hundred ($68,500.00) dollars, together with all interest coupons thereto attached, which accrued and became due on and after November 1, 1923, and that the plaintiff is entitled to all liens, rights and remedies, as provided by chapter 442, Public Laws 1909, chapter 94 of the Consolidated Statutes of North Carolina 1919, and all acts amendatory thereof and supplemental thereto.

"Second. That the plaintiff have and recover of the defendant the sum of four thousand three hundred fifty ($4,350.00) dollars, on account of coupons which matured prior to the commencement of this action, and which were attached to said bonds in October, 1923, the date of the loan made by the plaintiff bank, as found by issue 2 above set out. It is further adjudged that the plaintiff is entitled to all the liens, rights, and remedies as provided by the laws of North Carolina hereinbefore set forth, for the collection of said amount of four thousand three hundred fifty ($4,350.00) dollars."

To all of these actions of the trial court the defendant excepted, and duly gave notice of its purpose to appeal to this court.

Assignments of error in the first case, No. 2706, are 17 in number, and cover a large variety of subjects, all of which need not be considered in detail, as many of the assignments relate to the same subject-matter.

Assignment No. 1 is to the effect that the court below erred in granting the petition and motion of the plaintiff bank to strike out the amended answer of the defendant by its order of June 27, 1927, which was permitted in the same order in which the court denied the motion of L. J. Poisson, receiver for said drainage district, to be made a party to this action, the latter motion being the subject especially of the writ of error in case No. 2688. This assignment of error goes directly to the merits of the controversy between the parties, and indeed affects both of the writs of error. As shown by the facts heretofore recited, the suit is one at law to recover a large indebtedness alleged to be due by the defendant to the plaintiff, arising by reason of the purchase by said plaintiff of securities of the defendant, duly deposited as collateral security by defendant for the payment of in-

debtedness incurred by it in the prosecution of the drainage contract, evidenced by certain negotiable bonds executed by the defendant for that purpose, and passed to, and acquired by, the plaintiff, for value, before maturity, and without any knowledge on the part of the plaintiff of any infirmity or defect respecting the establishment of the drainage district or the issuance of the bonds.

The plaintiff regularly filed its complaint on May 25, 1925, setting forth its cause of action giving the details of the acquisition of the bonds by it, with the interest in arrears due thereon. On July 3, 1925, the defendant duly made answer to the complaint, and in effect admitted plaintiff's claim, save that it denied that the bank was a holder for value in due course. The defense thus interposed admitted the legality of the organization of the drainage district involved; that it was duly organized under the laws of the state of North Carolina; that the suit was wholly between citizens of different states and involved more than $3,000, exclusive of interest and costs; that on or about the 1st day of May, 1922, the bonds in question were duly issued, payable to bearer, with interest-bearing coupons attached; and that the numbers of said bonds, the dates of the maturities thereof and the amount of each bond, were correctly stated by plaintiff in its complaint; and that the bonds were delivered to and deposited with the Illinois Trust Company, of East St. Louis, in escrow, to be sold as money was needed to defray the expenses of the operation of the drainage work, including the monthly estimates by the drainage engineers for the work done by A. V. Wills & Sons, Incorporated, contractors in charge.

The bonds in question were duly passed to A. V. Wills & Sons, Incorporated, contractors as aforesaid, and by them pledged, to the plaintiff bank as collateral security for its indebtedness aforesaid, and were subsequently sold for their face value after due notice to meet the indebtedness for which they were pledged. The full proceeds of the sale were received and used by the defendant for the construction of the work. The securities became the property of plaintiff bank for value and before maturity. Upon leave being given on January 22, 1927, the defendant on May 21, 1927, filed the amended answer in question, and the court, on the motion of plaintiff made on June 3, 1927, on June 27, 1927, struck out the same. The propriety of this latter ruling is the subject of this assignment.

[1] The original pleadings, namely, the complaint and answer, correctly set forth the contentions of the respective parties regarding the cause of action in suit, and the amended answer attempted to set up grounds of defense wholly at variance with those of the original answer long before filed. The amended answer in no sense set up matters legitimately the subject either of amended or supplemental reply, but in many respects attempted to make an entirely new case from that stated in the original answer, and besides was replete with frivolous, irrelevant, immaterial, and dilatory matters. The amended answer, moreover, sought to attack collaterally the establishment of the drainage district and the issue of the securities by it, although the money arising from such securities issued in negotiable form had been obtained from the plaintiff bank and received and expended by defendant in the construction of the drainage system; and by said answer defendant sought to set up a judgment of the clerk of the superior court of Pender county, seeking to declare the original organization of drainage district No. 4 of said county invalid, together with the assessments made against the lands of said district pursuant to the liens created thereon to secure the payment of the bonds, which purported defenses were manifestly invalid and not open to defendant, the plaintiff being neither a party nor privy to the proceedings and judgment sought to be set up in the collateral attack as aforesaid. Whatever effect the proceedings so taken, if any, may have had as between the parties in the jurisdiction in which said proceedings were had, certainly it constitutes no valid defense or legitimate answer to the plaintiff, seeking to recover on negotiable securities received in due course for money paid by plaintiff and received by defendant in the establishment of the drainage system, since the plaintiff was not a party to such proceedings, and had no notice of the alleged infirmities sought to be attached to the bonds.

[2] The ruling of the trial court in striking out the amended answer was entirely correct, as was its refusal to recognize the right of the receiver to intervene, under the guise of holding the assets of the defendant, and to collect what was due the plaintiff on account of assessments due it under the drainage act affording it a lien collectible by the sheriff for the amounts due. Section 5361, Consolidated Stat. of N. C. 1919, vol. 2; Branch v. City of Sour Lake (D. C.) 9 F.(2d) 971. These assets are in no sense the property of the drainage commission, but belong to the plaintiff bank for the payment of its legiti-

mate liens assessed in its behalf for the amount advanced by it.

[3] The authorities maintain the two propositions: (1) That plaintiff is not bound or affected by the proceedings in the state court of North Carolina, sought to be set up and brought into this cause, to which it was never a party or privy, having in good faith paid its money, accepting the recitals, covenants, conditions, provisions, and promises specified in the bonds as well in respect to the issuance of the bonds as to the lawfulness of the establishment of the said drainage district; and (2) that the action establishing the drainage district and issuing the bonds, with the recitals and conditions contained therein as aforesaid, in the hands of an innocent holder for value without notice, cannot be assailed. Under the first proposition, the authorities are so well settled that it is hardly necessary to cite them. In 15 Ruling Case Law, p. 1005, the doctrine will be found thus stated:

"In regard to the persons in whose favor or against whom the doctrine of res judicata is applicable it is well settled that a judgment or decree is binding upon all parties to the proceeding in which it was rendered and their privies, and on the other hand it is equally well settled that with certain exceptions hereinafter noted, strangers to a judgment or decree are not bound thereby, and that it will not affect the rights of those who are neither parties nor privies in the suit and who have never had an opportunity to be heard."

See, in this connection, Hale v. Finch, 104 U. S. 261, 26 L. Ed. 732; Litchfield v. Goodnow's Administrator, 123 U. S. 549, 550, 551, 8 S. Ct. 210 (31 L. Ed. 199); Newby & White v. Drainage District, 163 N. C. 24, 79 S. E. 266; Williams v. Hutton, 164 N. C. 216, 223, 80 S. E. 257.

[4] As respects the right to attack the legality of the organization of the drainage district collaterally, the statute of North Carolina will be seen to fully answer the same (Consolidated Statutes of N. C. vol. 2, § 5379):

"5379. *Construction of Drainage Law.* The provisions of this subchapter shall be liberally construed to promote the leveeing, ditching, draining, and reclamation of wet and overflowed lands. The collection of the assessment shall not be defeated, where the proper notices have been given, by reason of any defect in the proceedings occurring prior to the order of the court confirming the final report of the viewers; but such order or orders shall be conclusive and final

that all prior proceedings were regular and according to law, unless they were appealed from. If on appeal the court shall deem it just and proper to release any person or to modify his assessment or liability, it shall in no manner affect the rights and legality of any person other than the appellant, and the failure to appeal from the order of the court within the time specified shall be a waiver of any illegality in the proceedings, and the remedies provided for in this subchapter shall exclude all other remedies."

This section of the law, which is section 37, chapter 442, Public Laws of 1909, was brought forward in the above section of the Consolidated Statutes of North Carolina.

[5] Not only was the ruling of the court below respecting the amended answer free from error, but the same was a ruling within the discretion of the trial court and not the subject of review on appeal. The third edition of Montgomery's Manual of Federal Jurisdiction and Procedure, recently issued, thus states the rule clearly:

"Sec. 379. *Amendment of Pleadings.*— In respect of the allowance of amendments to pleadings, the federal courts are not bound by the practice of the state courts. Section 954 of the Revised Statutes requires this conclusion. And, in contrast with the tendency of the courts of some of the states, federal courts have a marked disposition to allow amendments, whenever necessary to prevent a miscarriage of justice. The supposed reluctance of courts to break away from the old technicalities and exercise fully their inherent power of amendment has led to the enactment of statutes in many jurisdictions; and where a state statute establishes a more liberal rule than that which has obtained in the federal court, effect will be given thereto.

"As to whether an application to amend should be granted is deemed to be a question for the decision of the trial court, and not one that will be considered on appeal"—with many citations of authorities to sustain the same.

[6, 7] Nothing seems better settled than that an application of an intervener seeking to be admitted as a party to a pending cause is addressed to the sound discretion of the court, and where the application is denied, and such intervener left to avail himself of such rights as the law may afford him in other appropriate ways, that the order denying such application is an interlocutory, and not a final decree, and hence one from

which no appeal lies. Authorities to support this position might be cited almost without number, but the following cases from the Supreme Court of the United States will be found to be especially applicable and entirely conclusive of the subject: Connor v. Peugh's Lessee, 18 How. 394, 15 L. Ed. 432; Ex parte Cutting, 94 U. S. 14, 24 L. Ed. 49; Guion v. Liverpool, etc., Ins. Co., 109 U. S. 173, 3 S. Ct. 108, 27 L. Ed. 895; Credits Commutation Co. v. U. S., 177 U. S. 311, 316, 317, 20 S. Ct. 636 (44 L. Ed. 782).

Plaintiff in error cites and relies on the following authorities in support of the position taken by it as to the right to intervene in and become a party to this case: Porter v. Sabin, 149 U. S. 473, 13 S. Ct. 1008, 37 L. Ed. 815; Central National Bank v. Stevens, 169 U. S. 432, 18 S. Ct. 403, 42 L. Ed. 807; Farmers' Loan & Trust Co. v. Lake Street Elevated Co., 177 U. S. 51, 20 S. Ct. 564, 44 L. Ed. 667; Wabash Railroad v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Palmer v. Texas, 212 U. S. 118, 29 S. Ct. 230, 53 L. Ed. 435. These decisions are well recognized and are among the leading cases on the subjects covered by them, but, as we view them, they have no manner of application to this litigation, under its peculiar facts and circumstances.

[8] Assignment No. 2 relates to the refusal of the District Court after sustaining the petition to strike out the amended answer and refusing to allow intervening petitioner, L. J. Poisson, receiver, to be made a party to the case, to grant a continuance of the trial of the case theretofore, to wit, on May 30, 1927, set for trial at the September, 1927, term. Manifestly the court was correct in this ruling, as no continuance should have been granted at the instance of Poisson, receiver, who had been held not to be a party to the suit, and upon pleadings that had been stricken out. This was particularly true when the making of the motion for continuance was delayed until the first day of the term, more than three months after the time to try the case had been definitely set. The trial of the case had already been delayed more than two years, and to have allowed this motion, made without previous notice, and on the day fixed for the trial, with four or five witnesses, brought from some thousand miles away, present in court to testify, would have been an unwise exercise of discretion.

[9] Assignment No. 11 is to the effect that the court erred in allowing the ownership of the bonds from which the coupons sued on were taken to be passed upon in the suit to recover interest in default. Since the interest coupons would not be a valid claim, if the bonds themselves were invalid, manifestly the plaintiff, in its establishment of its ownership of the coupons, had the right to show the validity and ownership of the bonds, if, indeed, it was not necessary to do so. Certainly the existence, possession and ownership of the bonds bore directly upon the validity of the claim for the coupons.

[10] Assignments 3, 4, 5, 6, 7, and 9 (there being no assignment numbered 8) largely refer to the same general subject respecting the rulings of the court upon the admission or rejection of testimony pending the trial. As an illustration: That it was error to permit the witness Joseph L. Rehme, vice president of the Lafayette Southside Bank, to testify as to a matter between the plaintiff bank and A. V. Wills & Sons, Incorporated, which he did not personally supervise as an officer of the bank; and (fourth assignment) because the court permitted the plaintiff to introduce a note, marked Exhibit A, executed by A. V. Wills & Sons, Incorporated, to the bank, without proof of the execution of said note or proof of the entries thereon; because the court permitted the introduction of a notice of sale of the collateral bonds, Exhibit B, clipped from a newspaper in St. Louis, printed in full in the transcript; because of the introduction of Exhibit C, the bill for publishing said notice; because of the introduction of a memorandum, being Exhibit A, referred to in assignment No. 4 aforesaid; and because the witness, Charles, on cross examination was permitted to testify to certain entries upon a ledger leaf, Exhibit H, printed in full in the record.

These enumerated assignments are all clearly without merit, and it is quite apparent, upon a careful consideration of them, and on examining the record, that no injustice arose from any of the court's rulings involved. It will be unnecessary to discuss the rulings in detail, as they relate to matters entirely within the discretion of the court, and in which certainly any probable prejudice arising from such rulings could have, and would have, been readily pointed out and remedied. A sample of these exceptions is fairly presented in respect to the publication of the sale of the collateral bonds by the newspapers, which sale was proved by the witnesses and the receipt for the bill paid for such publication exhibited. These certificates from the publishers of the newspaper are made out in complete form by the business manager of the paper, and

sworn to by him as published, and the same were duly paid by the bank. These assignments appear to us to be entirely frivolous, and certainly such as this court, in ruling upon the action of the trial judge, would not set aside, particularly in a case of this sort, where the trial had been set for months in advance and witnesses brought a thousand miles to testify.

[11, 12] Assignments Nos. 12, 13, 14, and 15 all relate to the action of the trial court in submitting the case to the jury in the manner in which it was done, and the form of the jury's verdict. We have examined the several assignments, and they appear to us to be wholly without merit, and certainly the manner of submitting the case to the jury and the form of the verdict conform to the North Carolina practice. The only criticism that can be made is as to the charge on the facts of the case, and in that we do not find reversible error. On the contrary, it is in accordance with the federal practice frequently followed. The court instructed the jury that it was their province to pass upon the facts in the case, and the court's duty to determine the law, and directed that, if they believed the evidence on the issue involving the ownership of the bonds, they should answer "Yes" on the first issue, and on the second issue, regarding the amount of interest due, as evidenced by matured coupons, as of October, 1923, that they should answer "$4,350."

[13] Assignments Nos. 10, 16, and 17 will be considered together. Assignment 10 was for failure of the trial court to direct a nonsuit as against plaintiff upon the conclusion of its testimony, and assignment 16 was for the failure to instruct such nonsuit at the conclusion of all the testimony. The court's ruling was entirely correct on these two motions. The case had been fully submitted to the jury upon testimony amply sufficient to sustain a verdict for the plaintiff, if it had been rendered, and with no evidence offered on behalf of the defendant, and to take the case from the jury at that time and under such circumstances, in effect instructing a verdict for the defendant, would have been unthinkable. The court's action in refusing to set aside the verdict, and in rendering a judgment thereon, was likewise free from error, and clearly right.

[14] Upon considering the appeal in No. 2688, the last-named case, but one assignment of error is made:

"First. That the court erred in refusing to allow petitioner's motion to be made a party defendant in this cause, the petitioner being duly appointed receiver of the defendant drainage district, and ordered to defend suits against it, and being entitled to be made a party defendant and to defend this suit, in which the plaintiff seeks to establish liability against the drainage district."

This court, in its ruling upon assignment No. 1 in the first case herein, No. 2706, necessarily passed upon some of the questions the subject of this assignment. Two points of vital importance to the plaintiff in error are presented: First, whether the petitioner in the District Court, a receiver appointed by the state court in a suit seeking, in effect, to annul the drainage corporation, to which the defendant in error was neither a party nor privy, was entitled to intervene in and become a party to a suit pending in the federal court based on diversity of citizenship of the parties, the object of which was to collect a debt against the drainage corporation; and, second, whether the plaintiff in error was either a necessary or a proper party to the first case, No. 2706, under the circumstances, and what was the effect of the denial to petitioner of the right to intervene therein, when the status of such receiver is considered. To ask this question is to answer the same, especially as respects a receiver appointed by a court of a different sovereignty.

[15] A receiver has no title or right to property of any of the parties to the litigation vested in him. He is merely an indifferent person appointed as custodian to hold the property in litigation subject to the further order of the court. Booth v. Clark, 17 How. 322, 330, 331, 332, 338, 15 L. Ed. 164; Quincy, etc., Ry. v. Humphreys, 145 U. S. 82, 98, 12 S. Ct. 787, 36 L. Ed. 632; Great Western Mining Co. v. Harris, 198 U. S. 561, 576, 25 S. Ct. 770 (49 L. Ed. 1163). He does not represent the justiciable rights of the parties through the litigation of which he is receiver, but only the protection of property in his hands as such receiver, or the collection of assets, to the possession of which he is entitled as receiver.

[16] Where an effort is made to take property out of a receiver's possession, or where relief is sought against his acts as receiver, he is a proper party litigant; but where the litigation affects property not in his possession, and asserts rights thereto not disturbing his possession thereof, he is not a proper, much less an indispensable, party thereto. Continental Trust Co. v. Toledo,

St. L. & K. C. Ry. Co. (C. C.) 82 F. 642, 647.

[17, 18] The trial court was clearly right in not permitting the petitioner, L. J. Poisson, receiver, to intervene as requested, for the purposes desired. The right to intervene by parties who are strangers to the suit is one which rests in the sound discretion of the court, unless by consent or in accordance with statute. Rule 37 of the new federal Equity Rules fully covers this subject. Hopkins New Federal Equity Rules, No. 37, pp. 212, 213, 214, and cases cited; In re Veach (C. C. A.) 4 F.(2d) 335, 336, and cases cited. This rule, in plain terms, permits intervention in subordination to, and in recognition of, the propriety of the main proceedings, hence to seek to intervene with the view of challenging the jurisdiction of the court, or otherwise inaugurating litigation not within the scope and purview of the original suit, is not permissible, and should be denied. Union Trust Co. v. Jones, 16 F. (2d) 236 (a decision of this court), and cases cited.

[19] No appeal lies from an order denying a petition to intervene, as the right to file same was discretionary with the court. O'Connell v. Pacific Gas & Electric Co. (C. C. A.) 19 F.(2d) 460, 461, and cases cited.

[20] In No. 2688, the order denying the right of intervention and dismissing petition to that end was appealed from, and while the action subsequently taken by the court in trying the case on the merits and entering judgment might have been delayed until the appeal was heard, still, since this was not done, and the two cases are here on writs of error, one from the order denying the right to petitioner to be admitted, and the other from the action of the court in entering judgment on the merits, we see no good reason why both writs of error may not be now disposed of, since the appeal from the denial of the right to intervene is without merit, the case being one in which intervention clearly should not have been permitted. The effort to intervene was in no sense one in recognition of the propriety of the main proceedings, or intended to be subordinate thereto, but, on the contrary, was directly antagonistic to everything that was sought to be done in the main suit, and intended to contravene the same, and was filed therein after that suit had been pending more than two years.

The action of the trial court in both cases will be affirmed, with costs to the defendants in error.

Affirmed.