**ELKINS et al. v. FIRST NAT. BANK OF CITY OF NEW YORK. GOODMAN MFG. CO. v. WEST VIRGINIA COAL & COKE CO. KEARNS et al. v. SAME.**

No. 2990.

Circuit Court of Appeals, Fourth Circuit.

Sept. 19, 1930.

Rehearing Denied Oct. 24, 1930.

Fred O. Blue, of Charleston, W. Va. (Sam T. Spears, of Elkins, W. Va., on the brief), for appellants.

Douglas W. Brown, of Huntington, W. Va. (Walter L. Brown and Fitzpatrick, Brown & Davis, all of Huntington, W. Va., on the brief), for appellee.

Before PARKER, Circuit Judge, and WEBB and SOPER, District Judges.

PARKER, Circuit Judge.

On December 2, 1927, the Goodman Manufacturing Company filed in the court below a bill praying the appointment of receivers for the West Virginia Coal & Coke Company. After receivers had been appointed in that suit, Walter F. Kearns and the First National Bank of New York City, with leave of court, filed a bill asking for the foreclosure of a mortgage securing a bond issue. The two suits were later consolidated and orders were entered decreeing a sale of the mortgaged property and appointing a special master to take, state, and report an account showing, among other things, the validity, amounts, and priorities of all claims of creditors of the insolvent company. A sale of the property was had, and a deficiency judgment in favor of the mortgage trustee in the sum of $9,614,574.89 was rendered. The receivers realized from the sale of the property not subject to mortgage the sum of approximately $560,000.

On January 7, 1929, Hallie D. Elkins and others, whom we shall hereafter refer to as petitioners, filed with the special master their proof of claim in the sum of $197,768.28, based upon a judgment rendered by the circuit court of Randolph county, W. Va., on November 12, 1928, in an equity suit brought to compel the payment of dividends for the year 1917 upon the class A preferred stock of the insolvent company which they held. Prior to the filing of their claim, the First National Bank of New York City had filed with the special master its two claims in the sum of $919,441.50 and $1,535, respectively, for money loaned to the company in the years 1924 and 1926. And on September 30, 1929, petitioners tendered their intervening petition asking that they be allowed to intervene in the suit and that their claim be given preference in payment over the claims of the bank. From an order refusing to allow the intervention and striking the petition from the record, this appeal is prosecuted.

The intervening petition alleged that petitioners had been the owners of certain coal and railroad properties which, upon the organization of the insolvent corporation in the year 1917, had been transferred to it, and for which they had received 21,677 shares of its preferred stock providing for the payment of 6 per cent. semiannual dividends as and when declared by the board of directors; that, in the organization of the corporation, an official of the First National Bank of New York City had acted for the petitioners, that the common stock had been issued to individuals or companies associated with that bank, and that the bank occupied a fiduciary relationship toward petitioners because of its ownership of the common stock and the control of the directorate; that the corporation earned and accumulated during the year 1917 net profits to the amount of $492,651.47, entitling petitioners to a dividend on their preferred stock, which they had demanded of the directors; that the directors, being controlled by the bank in its own interest and in the interest of the common stockholders, refused to declare such dividend but used net profits to the amount of $302,290.58 toward paying off and retiring its 4–10 year series of serial notes of an issue of $2,500,000, notwithstanding that during the year it had purchased and retired such notes to the amount of $1,831,000 out of its working capital; that during the four years, 1918–1921, approximately $254,000 of the earnings of the company had been used to retire serial notes and $520,248 to pay dividends on the preferred and $1,440,000 to pay dividends on the common stock; that on November 16, 1918, petitioners had instituted suit in the circuit court of Randolph county, W. Va., against the company and its directors for the recovery of the 1917 dividends on the preferred stock; and that on November 11, 1928, they had secured a final decree in that suit for $197,768.29 and had filed certified copy thereof with the special master. It concluded with a prayer that the $919,441.50 claim of the bank be postponed to the rights of petitioners under their claim.

At the time of the order striking the petition from the record, petitioners were allowed to amend same so as to allege that the free assets coming into the hands of the receivers constituted a trust fund for the payment of their claim, and to pray that such assets be held to be a trust fund for the payment of petitioners' claim and the other debts of the company "and that the rights and equities of the petitioners and said First National Bank

of the City of New York therein, and thereto, as between themselves, be ascertained, determined and decreed" by the court.

▮ There can be no question, we think, that the petition for intervention was properly denied: As originally presented, it amounted to no more than an application on the part of the petitioners to have themselves made parties to the receivership proceeding in order that they might determine a question as to priority in the allowance and payment of claims. A special master had been appointed to pass upon just such questions, and any claim of petitioners to priority or any objection to the claim of the bank should have been made before him. It is not the ordinary or the proper procedure in a receivership proceeding to allow claimants who can have their controversies settled before a master with right of review by the court, to be made parties to the original cause and thus complicate the issues there involved. Acme White Lead & Color Works v. Republic Motor Truck Co. (D. C.) 285 F. 88; Jones & Laughlin v. Sands (C. C. A. 2d) 79 F. 913; Sands v. Greeley Co. (C. C.) 80 F. 195.

▮ In addition to merely raising a question of priority in the allowance and payment of claims, the petition as originally presented is objectionable on the further ground that this question of priority is alleged to arise out of matters wholly disconnected either with the receivership or with the claims themselves. Petitioners seek to have the claim of the bank postponed to the claim which they have asserted, not because the claim of the bank is not valid, and not because their claim is given any priority by law, but because they say that the directors of the insolvent corporation, through the influence of the bank or its officials, wrongfully refused to pay them a dividend to which they were lawfully entitled, a matter which is not alleged to have had any connection whatever with the loans upon which the claim of the bank is based. It is clear that intervention ought not be allowed when its effect would be to permit collateral and extraneous controversies of this character between claimants to be litigated in the receivership proceeding. Montgomery's Manuel of Federal Procedure (3d Ed.) § 732; Glass v. Woodman (C. C. A. 8th) 223 F. 621, 622; Lisman v. Knickerbocker Trust Co. (C. C. A. 6th) 211 F. 413, 423; Land Title & Trust Co. v. Asphalt Co. of America (C. C.) 114 F. 484, 485; Massachusetts Loan & Trust Co. v. Kansas City & A. R. Co. (C. C. A. 8th) 110 F. 28.

▮ Intervention under Equity Rule 37 (28 USCA § 723) is permitted to one claiming an interest in the subject-matter of the litigation, subject to the rule that such intervention is in subordination to and in recognition of the main proceeding. Ordinarily, whether or not such intervention shall be allowed is a matter resting within the sound discretion of the District Judge. Board of Drainage Commissioners v. Lafayette Southside Bank (C. C. A. 4th) 27 F.(2d) 286. And under the circumstances here there can be no question that, in denying the intervention, the discretion of the judge was properly exercised.

▮ Nor do we think that the position of petitioners is helped by the amendment allowed. If that amendent had set forth facts which showed that petitioners were entitled to a part of the fund in hands of the receivers, as distinguished from a mere dividend on their claim, or that such fund was impressed with a trust or subject to a lien in their favor, a different question would be presented. It is clear, however, that the facts alleged do not show them to be entitled to any part of the fund or that same is impressed with any trust or lien. It is not alleged that there was any setting apart of any part of the funds of the corporation for the payment of dividends on the preferred stock. On the contrary, the allegation is that the directors refused even to declare a dividend. To justify a holding that any part of the assets of the corporation was impressed with a trust for the payment of dividends to preferred stockholders, there must have been a setting apart of funds for that purpose. Fletcher's Cyclopedia of Corporations, § 3655; 14 C. J. 816; In re Interborough Consol. Corp. (C. C. A. 2d) 288 F. 334, 32 A. L. R. 932; McLaran v. Crescent Planing Mill Co., 117 Mo. App. 40, 93 S. W. 819; Hunt v. O'Shea 69 N. H. 600, 45 A. 480; Lowne v. American Fire Ins. Co., 6 Paige (N. Y.) 482. And even if dividends had been declared and set apart, it would be necessary to trace same into the assets coming into the hands of the receiver to charge such assets with a trust or lien for their payment. See Ellerbe v. Studebaker Corporation of America (C. C. A. 4th) 21 F.(2d) 993; First National Bank v. Williams (D. C.) 15 F.(2d) 585.

▮ The position of petitioners upon the amended petition, in its final analysis, comes to this: That where the directors of a corporation have failed to declare dividends which they should have declared, its stockholders have a lien upon its general assets.

for the dividends which should have been paid to them. It is too clear for discussion that such a position cannot be maintained.

An order denying intervention on the petition as originally presented would not have been appealable. Board of Drainage Commissioners v. Lafayette Southside Bank (C. C. A. 4th) 27 F.(2d) 286, 296; Massachusetts Loan & Trust Co. v. Kansas City & A. R. Co., supra. The petition as amended, however, asserted that the funds in the hands of the receivers were impressed with a lien or trust in favor of petitioners; and if this claim had been sustained by allegations of fact, petitioners would have been entitled to intervene as a matter of right. See Compton v. Jesup (C. C. A. 6th) 68 F. 263. While the facts asserted in the petition as amended were insufficient to sustain the claim, and the petition was therefore properly dismissed, the order dismissing it amounted to a final denial of the right claimed and was appealable. Credits Commutation Co. v. U. S., 177 U. S. 311, 316, 20 S. Ct. 636, 44 L. Ed. 782. The motion to dismiss the appeal will therefore be denied and the order of the court below will be affirmed.

Affirmed.

On Petition for Rehearing.

PER CURIAM.

The petition for rehearing in this case presents no point not already fully considered. Our attention is again called to the allegations of fraud appearing in the petition; but in our original opinion we expressly referred to the allegations that the bank occupied a fiduciary relationship towards petitioners, that the directors of the insolvent corporation, through the influence of the officials of the bank, wrongfully refused to declare and pay a dividend from the corporation's earnings, that they wrongfully used funds, which should have gone towards paying dividends, for paying off notes of the corporation, and that they took this action wrongfully, being controlled by the bank in its own interest and in the interest of common stockholders. Considering all of the allegations, we did not think that the petition, as originally presented, did more than raise a question of priority between claimants. We did not think that, as amended, it showed that petitioners were entitled to any part of the funds in the hands of the receivers or that these funds were impressed with a trust or lien for the payment of the dividends which they claimed. The allegation that moneys to which petitioners

were entitled in the year 1917 were diverted to the bank could not by any possibility authorize petitioners to intervene in a receivership proceeding instituted ten years later and claim funds of the insolvent corporation which had passed into the hands of the receiver for the benefit of creditors and which were not alleged to have been a part of the funds diverted. The principles governing the matter are set forth in the original opinion, and we see no reason for repeating what we said there.

Petition denied.