## UNITED STATES v. 1,830.62 ACRES OF LAND IN BOTETOURT COUNTY, et al.

### No. 60 Civil.

District Court, W. D. Virginia, at Harrisonburg.

Aug. 12, 1943.

Tom Stockton Fox and Harvey B. Apperson, both of Roanoke, Va., for petitioner, Standard Acc. Ins. Co.

W. P. Hazlegrove, of Roanoke, Va., for receiver of Triton Chemical Co.

PAUL, District Judge.

In January, 1942, the United States instituted this suit in condemnation to acquire certain real estate in Botetourt County, in this district, consisting of a tract of land with the buildings thereon and constituting a plant then owned by the Triton Chemical Company, Inc., a corporation having its residence in the State of Delaware, and operated by this company in the manufacture of explosives or explosive compounds.

After some delay, occasioned by efforts to agree upon a value of the property, the condemnor filed a formal declaration of taking and on June 12, 1942, paid into the registry of the court the sum of $465,000, its estimated value of the property taken. In the meanwhile a petition in bankruptcy was filed against the Triton Chemical Company in the district of Delaware on February 24, 1942, to which the company answered denying its insolvency. It being considered that the solvency of the company would depend upon what amount it ultimately received for the plant which was being condemned, the Delaware court refrained from any attempt to pass upon the issue of solvency at that time, but on September 4, 1942, appointed Caleb R. Layton as bankruptcy receiver for the company pending the final award in the condemnation case. On September 10, 1942, this court appointed Caleb R. Layton and W. P. Hazlegrove as ancillary receivers in this district to represent and protect the company in the condemnation proceeding and, at their request, authorized them to continue negotiations with the government in an effort to agree upon an amount to be paid by the latter for the property taken.

It was apparent from the beginning of the proceedings that there were a number of liens against the property being condemned which would have to be paid out of the award, as provided by the condemnation act, Sect. 4374, Code of Virginia. These consisted of unpaid taxes, Federal and State, liens by deed of trust, and mechanics liens. Pending the negotiations as to the value of the property, it was agreed that a reference should be had to ascertain the liens in order that they might

be paid as promptly as possible out of the fund previously deposited by the condemnor, thereby stopping the accrual of interest and expediting the disbursal of the balance of such sum as might finally be awarded. The liens were ascertained and, by an order of June 14, 1943, were ordered paid in an amount aggregating approximately $235,000.

Shortly thereafter the ancillary receivers reported that they had reached an agreement with the condemnor for the payment of $567,500 as full compensation for the property taken and, in order to follow the prescribed procedure of the condemnation statute, Virginia Code, Sect. 4366, commissioners were appointed who met on June 19, 1943, and returned an award in the agreed amount. This sum was $102,500 in excess of the amount previously deposited by the condemnor with its declaration of taking. All liens against the property have been paid and there being no adverse claims of title, it has been the expectation of this court that when the balance of the award shall have been paid the fund in the registry of the court will be paid over to the receiver in bankruptcy of the Delaware court, or to such other officer of that court or other person legally entitled to receive the estate of the condemnee.

It will be seen that the suit is purely one in condemnation, having for its purpose the ascertainment of the value of lands taken and the distribution of the compensation for such lands to such persons as are entitled thereto. The ascertainment of the liens on the property and their payment are an essential step in the last named purpose. The case differs in no way from any other condemnation case, except for the delay due to the negotiation of an agreed award and in the fact that the landowner is now represented by a bankruptcy receiver.

In this situation, the Standard Accident Insurance Company has filed what it terms its answer and intervening petition in which it sets out substantially the following: That on September 18, 1941, before this suit was instituted and while the Triton Chemical Company was operating its plant, it (the Triton Company) entered into a contract with the United States Government to furnish the latter with a large amount of trinitrotoluol and that the government agreed to advance to the Triton Company $260,000 to facilitate performance of the contract. That the government re-quired the Triton Company to execute a bond in the sum of $260,000 guaranteeing the repayment of the sum so advanced. That the government also required the Triton Company to execute another bond in the amount of $43,500 to guarantee its performance of the contract. That on September 18, 1941, the Standard Accident Insurance Company executed both of these bonds as surety for the principal obligor.

The petitioner then states that it is not accurately informed to what extent if any the Triton Company has failed to perform its contract with the government for the delivery of trinitrotoluol but that it believes that it has not fully performed its undertakings in that respect. That neither does the petitioner know to what extent the Triton Company has repaid the $260,000 advanced to it, but believes that a substantial part of such advance remains unpaid. That because of the bankruptcy proceedings against the Triton Company and for other reasons there has arisen serious question as to the solvency of the Triton Company and its ability to meet its obligations under the bonds mentioned and that petitioner is apprehensive that the government may make claims against it and seek to impose liability upon it as surety on said bonds.

The petitioner further asserts that, in addition to condemning the real estate of the Triton Company, the government seized and took possession of certain personal property of the Triton Company of a value of at least $121,975.19 for which the Triton Company has a claim. It asserts that when this amount is taken into account, along with the $465,000 paid into court with the declaration of taking and such additional amounts as may be finally awarded for the real estate, there will be either under control of the court, or in the possession of the government, sufficient funds to discharge any liability which might be asserted against petitioner by reason of its suretyship.

The petitioner prays that the United States be required to disclose in these proceedings the amount, if any, in which the Triton Company is indebted to the government by reason of the contract of September 18, 1941; what balance is due the government on its $260,000; and what amount the government owes the Triton Company for the personal property of the latter taken by the government. It is further prayed that, upon such disclosures

being made, the government be required to apply the amount it owes for the personal property, or for any other reason, to the obligations owed by the Triton Company, to the exoneration of the petitioner; or if this be not sufficient for that purpose and if there be an additional award in these proceedings, the government be compelled to apply the amount of such additional award to the same purpose; or that if the obligations of the Triton Company to the government be not paid from the amount owed for the personal property taken or from any additional award in this case, then that so much as is necessary of the $465,000 already paid into court be applied to discharge the liabilities of the Triton Company to the government and to exonerate petitioner as surety on the bonds.

It should be noted that the petition was prepared and filed in the Clerk's office some months ago before any additional award for the real estate had been made and before the liens on the property had been ascertained. This accounts for the fact that the petition refers to the additional award as a future possibility and in other unimportant respects is not in conformity with the facts existing as this is written. The change in the situation does not, however, affect the determination of the questions raised by the petition.

Briefly stated, the petitioner asks that in this proceeding the United States be required to render an accounting showing the amount of the present obligations to it of the Triton Company; and that these obligations be paid by application of any amounts owing from the government for the personal property taken or the award in this case for the land condemned, including in the latter the amount heretofore paid into the registry of the court with the declaration of taking.

The petition filed by Standard Accident Insurance Company is designated by it as an *answer* and petition to the petition in condemnation. Just how the Standard Accident Insurance Company is in position to file an answer in the suit is not clear. It was never made a party defendant and it does not come within the class referred to in the condemnation petition as other persons who "may have or claim some right, title or interest in or lien upon the real estate" and who are made defendants as "unknown owners". This latter is, of course, a formal and precautionary allegation to cover persons who unknown to the condemnor may have a right to share in the condemnation award, either through ownership of the land or as lienors.

The petition filed by Standard Accident Insurance Company is solely a petition by which it seeks to intervene in a condemnation suit to which it is not a party and could not properly be a party defendant, and by which it seeks to convert this suit into one in equity for an accounting and other relief and where the petition is in the nature of a bill quia timet. The petitioner cites copiously cases dealing with such rights as sureties may have in enforcing creditors to seek satisfaction of their debts out of the estate of the principal debtor to the exoneration of the surety. There is an abundance of authority on this subject applicable to suits in equity brought for that purpose. But that purpose is one completely foreign and unrelated to the purpose for which the present suit was instituted.

The petitioner bases his right to intervene upon Rule 24(a) of the Rules of Civil Procedure 28 U.S.C.A. following section 723c, which provides that: "Upon timely application anyone shall be permitted to intervene in an action: * * * (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof." As to this it may be pointed out that the Rules of Civil Procedure are not applicable to proceedings in condemnation except on appeals. See Rule 81(a) (7). It would seem, therefore, that intervention as a matter of right does not exist here; and that at best such intervention is permissive and within the sound discretion of the court. This principle has always obtained in regard to intervention except in instances where the intervener was a necessary party to the purposes of the suit, and old equity rule 37, 28 U.S.C.A. § 723 Appendix, the predecessor of Rule 24 of the Rules of Civil Procedure and which provided for permissive intervention subordinated to, and in recognition of the main proceeding, was merely declarative of settled principles. See Board of Drainage Commissioners v. Lafayette Bank, 4 Cir., 27 F.2d 286, page 293, where it is said: "Nothing seems better settled than that an application of an intervener seeking to be admitted as a party to a pending cause is addressed to the sound discretion of the court * * *."

It may be said in passing that the prayer of the petition is clearly inappropriate so far as it relates to any sum which the

United States owes the Triton Company for personal property taken by the former. This court has no concern with the personal property or its value and knows nothing of it. No fund arising from that source is in the custody of this court or could be brought in. This is a suit solely for the condemnation of lands.

■ Bearing in mind the purpose and scope of the instant suit, it is clear that the Standard Accident Insurance Company should not be permitted to intervene for the purpose sought. The would-be intervener is a stranger to the present proceeding whose presence as a party is not only unnecessary, but would be improper in the accomplishment of its ends. It seeks by its petition to transform the whole nature of the suit from one in condemnation to one in equity for an accounting between the condemnor and the condemnee and for relief to petitioner based on the possible outcome of such an accounting. No claim has been asserted by the United States against petitioner on the bonds on which it is surety and it does not know that any will be. The petitioner is as yet only a potential creditor of the Triton Company, and will never become actually such unless and until there is default in the bonds which petitioner is called upon to pay and does pay. Yet if the intervening petition were entertained it is obvious that all other creditors of the Triton Company would have to be brought into the suit as parties. The petitioner has no lien and stands in no preferred situation that permits the ignoring of other creditors who may have rights in the assets of the Triton Company superior to or similar to the potential claim of petitioner. To convene all of the creditors and determine their respective rights would be to turn this proceeding into something entirely foreign to its purpose and with undoubted complication and delay in its termination.

As said in the opinion in Board of Drainage Commissioners v. Lafayette Bank supra, an effort to intervene with a view to "inaugurating litigation not within the scope and purview of the original suit, is not permissible, and should be denied." See also Radford Iron Co. v. Appalachian Elec. Power Co., 4 Cir., 62 F.2d 940. In United States v. Columbia Gas & Electric Corp., D.C., 27 F.Supp. 116, 120, appeal dismissed Missouri-Kansas Pipe Line Co. v. United States, 3 Cir., 108 F.2d 614, certiorari denied Missouri-Kansas Pipe Line Co. v.

Columbia Gas & Electric Corp., 309 U.S. 687, 60 S.Ct. 887, 84 L.Ed. 1030, the court, in refusing a petition to intervene, used language particularly applicable here: "The prayers of the proposed petition of intervention diverge sharply from the subject matter of the supplemental complaint. Affording petitioner relief would fundamentally alter and seriously complicate the character of this proceeding. The bare statement of the prayers sufficiently indicates how far they depart from the scope of the Government's complaint and how serious a delay would be involved in the determination of the questions raised thereby."

In Chandler Co. v. Brandtjen & Kluge 296 U.S. 53, 59, 56 S.Ct. 6, 9, 80 L.Ed. 39, it is said: "Introduction by intervention of issues outside those that properly may arise between the original parties complicates the suit and is liable to impose upon plaintiff a burden having no relation to the field of the litigation opened by his bill."

See also Babcock v. Town of Erlanger, D.C., 34 F.Supp. 293, 296, and In re Willacy County Water, etc., Dist., D.C., 36 F. Supp. 36, 38, in the latter of which it is said: "When the claim or defense of the applicant [for intervention] departs from the field of litigation of the original parties in such a manner as to complicate and delay its determination, leave should be denied."

And see Credits Co. v. United States, 177 U.S. 311, 20 S.Ct. 636, 44 L.Ed. 782; Bache v. Hinde, 6 Cir., 6 F.2d 508; Adler v. Seaman, 8 Cir., 266 F. 828, 832; Harrington Bros. v. City of New York, D.C., 35 F.2d 1009; Elkins v. First Nat. Bank, etc., 4 Cir., 43 F.2d 777, 779.

The effort of the Standard Accident Insurance Company to intervene here is admittedly based on nothing more than an apprehension that the Triton Company may not satisfy its obligations to the United States for which the petitioner is surety and that in case of such default the United States may not proceed to enforce its right against the Triton Company, but may look to the surety instead. Even if these several contingencies happen, the petitioner is not without remedy. If it were called on to pay any sum under the bonds it would be subrogated to any rights of the United States against the Triton Company which it could enforce against the latter if it is solvent. If it happens that the Triton Company is adjudicated a bankrupt in the proceeding pending in Delaware and if the United

States did not prove its debt, if any, in the bankruptcy proceeding, Sect. 57, sub. i of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. i, affords the surety the opportunity to protect its rights. Apparently what the petitioner fears is that the Triton Company may prove to be insolvent resulting in an inability to pay its debts in full; and it hopes, through the prayer of its petition, to insure that the debt on which it is contingently liable will be satisfied in full before an adjudication in bankruptcy takes place, leaving the other creditors to divide the remnants of the estate. We need not consider whether the petitioner, even if called on to make payment under the bonds, will occupy any preferred status as a creditor of the Triton Company, either through the nature of its obligation or through subrogation to the priorities accorded the United States by statute. If it does occupy a preferred status it is protected against loss; if it becomes merely a common creditor, then it should not be allowed to obtain an advantage over other common creditors by the course it seeks to pursue. Whatever may be the purpose of its desire to intervene, there is no sound reason why it should be permitted to transform the entire nature of the pending suit and complicate and delay its termination when it has ample remedies otherwise.

If the court is to treat the petition of Standard Accident Insurance Company, already filed by it in the Clerk's office, as a motion to be permitted to intervene such motion would not seem to be in compliance with the provisions of Rule 24(c). Cowan et al. v. Tipton, D.C., 1 F.R.D. 694; Miami County Bank, etc., v. Bancroft, 10 Cir., 121 F.2d 921, 925. It is not shown that notice of such motion has been given to all parties affected thereby. However, any failure in this respect could be corrected by a supplemental motion complying with the formalities required by the rule.

Another ground of objection, or at least a potential and prospective barrier to petitioner's right to intervene, is the fact that the relief prayed is in effect a suit against the United States from which an accounting is demanded. The United States cannot be sued without its consent, and I am not aware nor has authority been cited to establish that such consent exists. True, the United States has not appeared in opposition to the petition, but it is my understanding that its attitude is adverse to the petition; and if formal notice of a motion to intervene were given under Rule 24(c), it is probable that in response to such notice, the United States would oppose on the ground stated. In pointing out these last two matters, the court realizes that the first is a temporary objection which might be cured and that the second has not as yet been formally raised; and it desires to make clear that the court's action in denying the petition does not rest on either of these objections. No matter what formalities are complied with in the matter of notice or what consent the United States may give to being sued, the petition to intervene must be denied for the reasons previously given.